**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>    *Plaintiff*,<br><br>           **v.**<br><br>**INHANCE TECHNOLOGIES LLC,**<br>    *Defendant.* | Civ. No. 5:22-CV-05055-JFM |

**UNITED STATES' COMBINED REPLY IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT AND RESPONSE TO THE INTERVENOR-
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

Table of Authorities ..................................................................................................... iii

United States' Reply in Support of its Motion for Partial Summary Judgment on Liability .......... 1

ARGUMENT ................................................................................................................. 1

I.    This Case is Ripe. ................................................................................................ 1

II.   Summary Judgment is Proper Now. ................................................................. 6

    A.   All Evidence Establishing Inhance's Liability Comes from Inhance Itself. ..................... 6

    B.   Inhance Cannot Show How Discovery is Relevant to its Defense. ................................ 7

    C.   Inhance's Asserted Fact Issues are Either Undisputed, Unsupported, or Legal Questions for the Court to Resolve. .................................................. 14

        1.   The United States Does Not Dispute that Inhance Has Continuously Produced Long-Chain PFAS by Fluorinating Containers. ...................................... 14

        2.   There are No Genuinely Disputed Facts as to Whether the Long-Chain PFAS Produced by Inhance are Byproducts or Impurities. .................................. 15

        3.   Inhance had Fair Notice that the Regulation Could Apply to Its Fluorination Activities, and No Facts are Genuinely Disputed. ...................................... 18

        4.   Inhance Does Not Qualify for the Article Exemption. ............................................. 22

United States' Response to Intervenor-Plaintiffs' Motion for Summary Judgment .................... 25

CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                    <u>Page(s)</u>

*Am. Raisin Packers, Inc. v. U.S.D.A.*,
   221 F. Supp. 2d 1209 (E.D. Cal. 2002), *aff'd*, 66 F. App'x 706 (9th Cir. 2003) ...................... 18

*Artway v. Att'y Gen. of State of New Jersey*,
   81 F.3d 1235 (3d Cir. 1996) ........................................................................................... 12, 13

*Berger v. Xerox Corp. Ret. Income Guarantee Plan*,
   338 F.3d 755 (7th Cir. 2003) ................................................................................................. 25

*Bracy v. Pfizer Inc.*,
   839 F. App'x 691 (3d Cir. 2020) ........................................................................................... 14

*Calderon v. Ashmus*,
   523 U.S. 740 (1998) ................................................................................................................. 5

*Citizens United v. FEC*,
   558 U.S. 310 (2010) ............................................................................................................... 12

*City of Chicago v. Morales*,
   527 U.S. 41 (1999) ................................................................................................................. 19

*Club Madonna, Inc. v. City of Miami Beach*,
   924 F.3d 1370 (11th Cir. 2019) ............................................................................................ 13

*Collier v. Adams*,
   602 F. App'x 850 (3d Cir. 2015) ........................................................................................... 16

*Conley v. Dauer*,
   463 F.2d 63 (3d Cir. 1972) .................................................................................................... 25

*Doe v. Abington Friends Sch.*,
   480 F.3d 252 (3d Cir. 2007) ......................................................................................... 8, 9, 14

*Dowling v. City of Philadelphia*,
   855 F.2d 136 (3d Cir. 1988) .................................................................................................... 8

*Env't Conservation Org. v. City of Dallas*,
   529 F.3d 519 (5th Cir. 2008) .................................................................................................... 3

*Evans v. United Arab Shipping Co. S.A.G.*,
   4 F.3d 207 (3d Cir. 1993) ...................................................................................................... 16

*F.C.C. v. Fox Television Stations, Inc.*,
   567 U.S. 239 (2012) ............................................................................................................... 11

*F.T.C. v. Wyndham Worldwide Corp.*,
   799 F.3d 236 (3d Cir. 2015) ............................................................................................ 11, 20

*Free Speech Coal., Inc. v. Attorney Gen. of U.S.*,
   677 F.3d 519 (3d Cir. 2012) .................................................................................................. 12

*GE Grp. Life Assur. Co. v. Turner*,
   No. 3:05-342, 2009 WL 150944 (W.D. Pa. Jan. 20, 2009) ...................................................... 7

*Gen. Elec. Co. v. U.S. E.P.A.*,
   53 F.3d 1324 (D.C. Cir. 1995) ................................................................................... 11, 20, 21

*Harris v. City of Philadelphia*,
   47 F.3d 1333 (3d Cir. 1995) .................................................................................................. 19

*Harris v. Mexican Specialty Foods, Inc.*,
   564 F.3d 1301 (11th Cir. 2009) ............................................................................................ 13

*Heublein, Inc. v. United States*,
  996 F.2d 1455 (2d Cir. 1993) .......................................................................... 15
*Howmet Corp. v. EPA*,
  656 F. Supp. 2d 167 (D.D.C. 2009) ................................................................ 19
*Howmet Corp. v. EPA*,
  614 F.3d 544 (D.C. Cir. 2010) .............................................................. 19, 20, 21
*iMatter Utah v. Njord*,
  774 F.3d 1258 (10th Cir. 2014) ...................................................................... 12
*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*,
  919 F.3d 638 (1st Cir. 2019) .......................................................................... 25
*Initiative & Referendum Inst. v. Walker*,
  450 F.3d 1082 (10th Cir. 2006) ........................................................................ 4
*Introna v. Allstate Ins. Co.*,
  850 F. Supp. 161 (E.D.N.Y. 1993) .................................................................. 15
*JEM Broad. Co. v. F.C.C.*,
  22 F.3d 320 (D.C. Cir. 1994) .......................................................................... 10
*Justice v. Fabey*,
  541 F. Supp. 1019 (E.D. Pa. 1982) ................................................................... 7
*Lauderbaugh v. Hopewell Twp.*,
  319 F.3d 568 (3d Cir. 2003) .............................................................................. 4
*McDermott Int'l, Inc. v. Wilander*,
  498 U.S. 337 (1991) ....................................................................................... 16
*Midrad, LLC v. Dane Cnty., Wis.*,
  676 F. Supp. 2d 795 (W.D. Wis. 2009) ............................................................ 4
*Nat'l Oilseed Processors Ass'n v. OSHA*,
  769 F.3d 1173 (D.C. Cir. 2014) ...................................................................... 20
*Nat'l Parks Conservation Ass'n, Inc. v. Tennessee Valley Auth.*,
  618 F. Supp. 2d 815 (E.D. Tenn. 2009) ......................................................... 19
*Newell Cos., Inc. v. Kenney Mfg. Co.*,
  864 F.2d 757 (Fed. Cir. 1988) ........................................................................ 16
*Patton v. Dir., Off. of Workers' Comp. Programs, U.S. Dep't of Lab.*,
  763 F.2d 553 (3d Cir. 1985) ............................................................................ 19
*Peachlum v. City of York, Pennsylvania*,
  333 F.3d 429 (3d Cir. 2003) .............................................................................. 4
*Plains All Amer. Pipeline L.P. v. Cook*,
  866 F.3d 534 (3d Cir. 2017) .............................................................................. 4
*Powell v. McCormack*,
  395 U.S. 486 (1969) ......................................................................................... 5
*Skilling v. United States*,
  561 U.S. 358 (2010) ....................................................................................... 19
*Stein v. Oshinsky*,
  348 F.2d 999 (2d Cir. 1965) ............................................................................. 7
*Step-Saver Data Sys, Inc. v. Wyse Tech.*,
  912 F.2d 643 (3d Cir. 1990) .............................................................................. 4
*United States v. Cinemark USA, Inc.*,
  348 F.3d 569 (6th Cir. 2003) .......................................................................... 20

iv

*United States v. Farley,*
  11 F.3d 1385 (7th Cir. 1993) ............................................................. 11
*United States v. Nasir,*
  17 F.4th 459 (3d Cir. 2021) ............................................................... 24
*United States v. Salerno,*
  481 U.S. 739 (1987) ........................................................................... 12
*Ward v. Rock Against Racism,*
  491 U.S. 781 (1989) ........................................................................... 20
*Williams v. BASF Catalysts LLC,*
  765 F.3d 306 (3d Cir. 2014) ................................................................. 5

Statutes

5 U.S.C. § 706 ....................................................................................... 10
15 U.S.C. § 2601 *et seq.* ......................................................................... 1
15 U.S.C. § 2602(13) ............................................................................ 23
15 U.S.C. § 2604 (2016) .......................................................................... 2
15 U.S.C. § 2604(a) ............................................................................... 25
15 U.S.C. § 2604(a)(1) ............................................................................ 1
15 U.S.C. § 2604(a)(1)(B) ................................................................ 2, 3, 8
15 U.S.C. § 2610(c) ................................................................................. 6
15 U.S.C. § 2614(1) ............................................................................... 25
15 U.S.C. § 2618(a)(1)(A) ...................................................................... 10
15 U.S.C. § 2618(c)(1)(B) ...................................................................... 10
15 U.S.C. § 2625(k) ............................................................................... 10
29 U.S.C. § 10001 ................................................................................. 25
35 U.S.C. § 103 ..................................................................................... 16
Pub. L. No. 114-182, 130 Stat. 448 (2016) ............................................. 2

Rules

Fed. R. Civ. P. 26(b)(1) ........................................................................... 9
Fed. R. Civ. P. 56(a) ............................................................................... 6
Fed. R. Civ. P. 56(b) ............................................................................... 7
Fed. R. Civ. P. 56(c) ............................................................................... 6
Fed. R. Civ. P. 56(c)(1) .......................................................................... 16
Fed. R. Civ. P. 56(d) ..................................................................... 7. 8, 14

Regulations

40 C.F.R. Part 720 ................................................................................. 18
40 C.F.R. Part 720.1 .............................................................................. 17
40 C.F.R. § 720.3 .................................................................................. 15
40 C.F.R. § 720.3(c) .............................................................................. 23
40 C.F.R. § 720.3(d) .............................................................................. 15
40 C.F.R. § 720.3(m) ............................................................................. 15

40 C.F.R. § 720.30 ............................................................................................................... 18
40 C.F.R. § 720.30(h)(1) ..................................................................................................... 18
40 C.F.R. § 720.30(h)(2) ..................................................................................................... 18
40 C.F.R. § 720.30(h)(5) ..................................................................................................... 23
40 C.F.R. Part 721 ................................................................................................... 15, 17, 18
40 C.F.R. § 721.10536(b)(1)-(3) ......................................................................................... 20
40 C.F.R. § 721.10536(b)(4)(iii)-(iv) .................................................................................. 21
40 C.F.R. § 721.10536(b)(5) .......................................................................................... 15, 21
40 C.F.R. § 721.25 ................................................................................................................. 1
40 C.F.R. § 721.3 ................................................................................................................. 15
40 C.F.R. § 721.45 ............................................................................................................... 17
40 C.F.R. § 721.45(d) ............................................................................................... 17, 18, 24
40 C.F.R. § 721.45(e) ..................................................................................................... 18, 24
40 C.F.R. § 721.45(f) ..................................................................................................... 23, 24
40 C.F.R. § 721.45(g) .......................................................................................................... 24
85 Fed. Reg. 45109 (July 27, 2020) .............................................................................. 15, 21

## Other Authorities

4 Charles Alan Wright & Arthur R. Miller,
    *Federal Practice and Procedure* §§ 2008, 2724, 2728 (4th ed.) ................................ 6, 8, 10, 14
Merriam-Webster (online ed. July 2023) .................................................................................. 23

## Legislative History

162 Cong. Rec. S3513 (2016) ................................................................................................... 3

**United States' Reply in Support of its Motion for Partial Summary Judgment on Liability**

For the reasons stated in the United States' motion for partial summary judgment, the Court should grant the motion and issue a declaratory judgment holding Inhance Technologies LLC ("Inhance" or "Defendant") liable for its past and continuing violations of the Toxic Substances Control Act ("TSCA"), 15 U.S.C. § 2601 *et seq.* ECF No. 37.[1]  Nothing in Inhance's opposition brief, EFC No. 49, alters that conclusion.

In its brief, Inhance reprises the misguided justiciability argument raised in its motion to dismiss, ignoring that this case concerns its past and ongoing violations of TSCA and making the logically inconsistent argument that the case is not ripe because it may at some point be moot. ECF No. 49 at 6.  Inhance also claims discovery is needed.  But it fails to explain—as precedent requires—how discovery could preclude summary judgment.  This is not surprising because discovery is not needed here.  Inhance's liability is based on the statutory and regulatory text and materials that Inhance itself submitted to EPA.  Last, the purported disputes of material fact that Inhance conjures are, in truth, issues of law for the Court to resolve.  Under Federal Rule of Civil Procedure 56, the United States is entitled to summary judgment on Inhance's liability.

## ARGUMENT

### I.      This Case is Ripe.

As discussed in the United States' opposition to Inhance's motion to dismiss, ECF No. 25 at 8-15, Defendant's subject-matter jurisdiction argument fails because this enforcement action is ripe for judicial review.  This case is ripe because Inhance is currently violating Section 5(a)(1) of TSCA, 15 U.S.C. § 2604(a)(1), and 40 C.F.R. § 721.25, by continuing to manufacture

---

[1] The United States incorporates in full its arguments in its motion for summary judgment, ECF. No. 37, and in the United States' opposition to Inhance's motion to dismiss the United States' complaint, ECF No. 25.

multiple PFAS that are subject to the Long-Chain PFAS Rule *before* EPA has made statutorily required "determinations" on Inhance's pending SNUNs.  Contrary to Inhance's claims, the fact that EPA is currently reviewing Inhance's submissions does not mean this action is premature. ECF No. 49 at 11-12.  The United States is suffering a present injury, which is redressable now.

The plain language, legislative history, and substantive policy of Section 5 of TSCA, particularly as revealed in the 2016 Amendments to the statute, show that Congress intends that no person may manufacture a chemical substance for a significant new use *unless and until* EPA (1) reviews the SNUN, (2) makes a determination regarding the unreasonable risk of injury to health or the environment that may be presented, and (3) takes any action necessary to protect against the unreasonable risk.  15 U.S.C. § 2604(a)(1)(B).

In 2016, Congress amended Section 5 of TSCA (among other provisions).  Prior to the Amendments, an entity could manufacture a new chemical or a chemical for a significant new use so long as it submitted notice and data, and the EPA did not affirmatively conclude and notify the manufacturer within 90 days that the chemical substance "presented an unreasonable risk of injury to health or the environment."  15 U.S.C. § 2604 (2016).  The 2016 Amendments shift the burden to industry to obtain an affirmative determination on risk from EPA *before* the manufacture (or processing) of a new chemical substance or a chemical substance for a significant new use may lawfully begin.  *See* TSCA § 5, as amended by the Frank R. Lautenberg Chemical Safety for the 21st Century Act, Pub. L. No. 114-182, § 5, 130 Stat. 448, 454-60 (2016).  And the 2016 Amendments prohibit EPA from considering any non-risk factors as part of its review and determination of an entity's requested manufacturing.  The 2016 Amendments expressly prohibit such manufacturing *unless and until* EPA makes a determination on the SNUNs concerning the unreasonable risk of injury to health or the environment that may be

presented by the manufacturing, and the agency takes action necessary to protect against unreasonable risk.  15 U.S.C. § 2604(a)(1)(B).  *See* Ex. 1 (Comparison of Amended TSCA to prior TSCA).

As Senator Udall stated on the Senate floor regarding the 2016 Amendments:

> Today, under the old TSCA, reviewing chemicals is discretionary.  When this bill is law, the EPA will be required to methodically review all existing chemicals for safety
> . . . .  Today, the old law requires that the EPA consider the costs and benefits of regulation when studying the safety of chemicals.  Very soon, EPA will have to consider only the health and environmental impacts of a chemical.  If they demonstrate a risk, EPA will have to regulate . . . .
>
> *Today, the old TSCA allows new chemicals to go to market without any real review, an average of 750 a year. Very soon, the EPA will be required to determine that all chemicals are safe before they go to the market.*

162 Cong. Rec. S3513 (2016) (emphasis added).  Inhance flouts the regime Congress enacted in 2016, running roughshod over the congressional intent underlying Section 5.  To argue there is no current case or controversy ignores the text and policy of TSCA.

Inhance asserts that "the outcome of the administrative process very well could moot this lawsuit" if EPA, after review, determines that Inhance's manufacture of long-chain PFAS[2] is not likely to present an unreasonable risk.  ECF No. 49 at 6.  But Defendant ignores Section 5's plain meaning and purpose.  As Senator Udall aptly stated, the point is to prevent injury to the public from chemicals "*before they go to market.*" 162 Cong. Rec. S3513 (emphasis added).[3]

---

[2] The United States incorporates the definition of "long-chain PFAS" in its motion for partial summary judgment, i.e., PFAS that have "perfluorinated carbon chain lengths" containing between seven to twenty carbon atoms and that are subject to the Final Rule.  ECF No. 37 at 5.

[3] *Env't Conservation Org. v. City of Dallas*, cited by Inhance, is inapposite.  529 F.3d 519, 528-29 (5th Cir. 2008).  There, the Fifth Circuit held that a citizen-suit case was moot after the United States had filed an enforcement action and the district court had approved a consent decree settling the case that required the City to comply with its permit and the Clean Water Act. The Fifth Circuit held that the citizen-suit plaintiff was required to prove a realistic prospect that the violations alleged in its complaint would continue despite the consent decree.  Here, by

Moreover, to say a case *may* become moot is to concede that it is presently ripe.  *See Midrad, LLC v. Dane Cnty., Wis.*, 676 F. Supp. 2d 795, 799 (W.D. Wis. 2009) ("A moot claim is one that *was* ripe but is no longer a live controversy[.]").  This case is ripe for review.

Contrary to Defendant's assertion, this is no less true as to the United States' claim for declaratory relief.  ECF No. 49 at 11.  Defendant relies on inapt caselaw, such as *Step-Saver Data Sys, Inc. v. Wyse Tech.*, 912 F.2d 643, 646-47 (3d Cir. 1990).  ECF No. 49 at 6-7.  But as the Third Circuit explained in *Peachlum v. City of York, Pennsylvania*, "the *Step–Saver* analysis is tailored to address pre-enforcement actions."  333 F.3d 429, 435 (3d Cir. 2003).[4]  In the cases cited by Inhance, parties sought "declaratory judgments . . . before 'accomplished' injury c[ould] be established."  *Step-Saver*, 912 F.2d at 647.  Because the asserted injuries had yet to occur in those cases, the Third Circuit assessed several factors to determine whether the dispute was ripe.  *See, e.g.*, *Plains All Amer. Pipeline L.P. v. Cook*, 866 F.3d 534, 540 (3d Cir. 2017) (analyzing the adversity of the parties' interests and the conclusiveness and utility of the judgment).  But such ripeness tests have limited application where, as here, the United States suffers an ongoing injury.  *See Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1098 (10th Cir. 2006) ("The ripeness challenge fails here because the Plaintiffs' alleged injury is already occurring.").

Moreover, even under the *Step-Saver* analysis, the United States' claim for declaratory relief is ripe because a ruling in the United States' favor would conclusively and fully resolve the

---

contrast, Inhance is continuing to violate Section 5 of TSCA, the United States is suing to enforce the law, and there is no consent decree resolving the U.S. claims.  Thus, the United States' action is not moot.

[4] As the United States explained in its opposition brief, the cases Inhance cites typically concern *pre-enforcement review* of a provision.  ECF 25 at 15-16.  That is clearly not the case here where the United States has filed an *enforcement action* to restrain Inhance's continuing unlawful manufacture of PFAS subject to the Long-Chain PFAS Rule.  *See Peachlum*, 333 F.3d at 435 (citing *Lauderbaugh v. Hopewell Twp.*, 319 F.3d 568, 575 (3d Cir. 2003) (declining to apply the *Step-Saver* test in case where enforcement was pending)).

question of Inhance's liability.  Such a ruling also would have utility since, as the Supreme Court stated in *Powell v. McCormack*, a declaratory judgment can be used as a predicate to further relief, including an injunction.  395 U.S. 486, 499 (1969).

Defendant erroneously contends that the Supreme Court rejected comparable claims for declaratory relief in *Calderon v. Ashmus*, 523 U.S. 740, 747 (1998).  In *Calderon*, an inmate sought a declaratory judgment as to the validity of an affirmative defense that the State might raise in a habeas proceeding.  The Court held that the action did not present a case or controversy but rather was an "attempt[] to gain a litigation advantage by obtaining an advance ruling on an affirmative defense."  *Id*.  By contrast, here, the United States does not seek a declaration on an affirmative defense that Inhance may or may not raise, but instead seeks a ruling on Defendant's past and continuing liability.  Far from asking this Court to "merely determine a collateral legal issue governing certain aspects of their pending or future suits," the United States asks this Court to determine the central legal issue in this case.  *Id*.

Similarly, Defendant mistakenly relies on *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 327-28 (3d Cir. 2014).  In *Williams*, the estates of workers who allegedly died as a result of occupational exposure to asbestos brought a class action against manufacturers of asbestos-containing products.  The Third Circuit held, *inter alia*, that the estates' fraud and fraudulent concealment claims were not barred, but that the estates' "requests [for] declarations (or injunctions) determining rights and defenses available to [defendants] in future [state court] proceedings" did not present a justiciable controversy.  *Id*.  Again, unlike in *Williams*, the United States is not inviting this Court "to wade into a legal conflict that is not before it," *id.* at 328, but seeks a decision on a live controversy over Inhance's statutory liability.

The United States' action and its motion for summary judgment are ripe.

5

## II.     Summary Judgment is Proper Now.

There is no genuine issue of material fact that Inhance has and continues to violate TSCA by manufacturing long-chain PFAS for significant new uses both before it submitted SNUNs to EPA and during the agency's ongoing review of those SNUNs.  *See* ECF No. 37; FED. R. CIV. P. 56(a).  As explained below, Inhance's opposition fails to (a) rebut the United States' affirmative arguments on liability or (b) show that the Government is not entitled to summary judgment.

### A.    All Evidence Establishing Inhance's Liability Comes from Inhance Itself.

The United States' liability case against Inhance is based on evidence submitted by Inhance to EPA, either in response to EPA administrative subpoenas issued under Section 11(c) of TSCA, 15 U.S.C. § 2610(c), or in Inhance's nine SNUN submissions to EPA.  *See* ECF No. 37-1 at A-1-2 (index to Appendix listing exhibits in support of the United States' instant motion).[5]  These documents—whose truth and accuracy Inhance attested to subject to criminal penalty—are direct evidence of Defendant's liability.  No additional documents or inferential steps are required to hold Inhance liable.

Inhance cannot—and in its brief does not—genuinely dispute the central facts that (1) by fluorinating containers, Inhance has and continues to generate the nine species of long-chain

---

[5] Under Rule 56(c), a party must support its assertion "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, . . . or other materials."  Inhance takes the puzzling position that the documents it submitted to EPA, and that the United States' motion relies on, are not "documents" within the meaning of Rule 56(c) but instead are "other materials."  ECF No. 49 at 8.  That contention is both wrong and irrelevant. The documents Inhance provided to EPA consist of laboratory reports that show the presence of long-chain PFAS in containers and fuel tanks fluorinated by Inhance, as well as other subpoena responses.  These are, obviously, "documents."  "Other materials," by contrast, typically captures non-documentary evidence, *see* 4 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE [hereinafter "WRIGHT & MILLER"] § 2724 (4th ed.).  Regardless, even if Inhance's submission to EPA are "other materials," Rule 56(c) plainly allows for such.

PFAS identified in Paragraph 12 of the United States' Statement of Undisputed Material Facts ("SUMF"), ECF No. 37-2 at 3-4, and (2) the nine species of PFAS identified in Paragraph 12 of the SUMF are substances subject to the Final Rule, *id*. at 3.  Put another way, Inhance does not attempt to rebut the facts demonstrating the affirmative case for its liability.  Rather, Inhance states both that it needs discovery to support its affirmative defenses and that fact issues (which are actually legal questions) exist regarding these affirmative defenses.  As explained below, Inhance's arguments should be rejected.

### B.  Inhance Cannot Show How Discovery is Relevant to its Defense.

Inhance complains that the United States' motion for partial summary judgment "comes too early."  ECF No. 49 at 7.  But Rule 56(b) expressly authorizes the filing of a motion for summary judgment "*at any time* until 30 days after the close of all discovery." (emphasis added). *See Stein v. Oshinsky*, 348 F. 2d 999, 1000-01 (2d Cir. 1965) (motion for summary judgment filed after defendants filed motion to dismiss for lack of subject-matter jurisdiction and for failure to state a claim was not premature).[6]  Thus, the United States' motion is timely.  Under Rule 56(d), it is Inhance's burden, as the proponent of the claim that the motion is premature, to "show[] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."  This Inhance cannot do.

Inhance devotes a substantial portion of its brief to citing cases for the uncontroversial proposition that, when a nonmovant sufficiently explains why it needs discovery to defend itself against a summary judgment motion, that motion is premature.  ECF No. 49 at 8-10.  But this

---

[6] *See Justice v. Fabey*, 541 F. Supp. 1019, 1019-25 (E.D. Pa. 1982) (The filing of a motion for summary judgment "during the pendency of a motion to dismiss and before a defendant has had an opportunity to answer the complaint, does not itself render the motion premature[.]"); *GE Grp. Life Assur. Co. v. Turner*, No. 3:05-342, 2009 WL 150944 (W.D. Pa. Jan. 20, 2009) (granting summary judgment when defendant had not answered plaintiff's complaint nor responded to its motion).

merely raises the question: Has Inhance detailed how the particular information it seeks would preclude summary judgment?  The answer is no.  *See Doe v. Abington Friends Sch.*, 480 F.3d 252, 255 n.3 (3d Cir. 2007) ("We have repeatedly noted the need for a party moving under Rule 56(f) to accompany the motion with a supporting affidavit detailing 'what particular information is sought; how, if uncovered, it would preclude summary judgment[.]'" (quoting *Dowling v. City of Philadelphia*, 855 F.2d 136, 140 (3d Cir. 1988)).[7]

  Inhance claims it needs discovery for several reasons.  None are persuasive.  First, Inhance notes that EPA has not "completed [its] administrative" review of the SNUNs, implying that Inhance needs access to the administrative record.  ECF No. 49 at 3-4.  That argument is irrelevant.  The United States' claim for declaratory relief expressly seeks a "judgment that the Defendant has and continues to violate" TSCA "by manufacturing or processing PFAS for a significant new use subject to the Long-Chain PFAS Rule, *before submitting a notice to the EPA, and before the EPA has conducted the review and determination process* required under Section 5(a)(1)(B) of TSCA, 15 U.S.C. § 2604(a)(1)(B)."  ECF No. 3, Compl. at Relief Sought ¶ A (emphasis added).  Inhance appears to recognize as much, contending that this case could become moot after EPA renders decisions on the SNUNs.  ECF No. 49 at 1.  Discovery from EPA's SNUN review is irrelevant to this action and thus improper.  WRIGHT & MILLER § 2008 (4th ed.) ("Perhaps the single most important word in Rule 26(b)(1) is 'relevant,' for it is only relevant matter that may be the subject of discovery.").

  Inhance's other purported rationales for seeking discovery are similarly unavailing. Inhance asserts that it lacks information related to EPA's knowledge of its fluorination of

---

[7] Rule 56(d) was amended in 2010 to incorporate the substance of Rule 56(f).  FED. R. CIV. P. 56(d) advisory committee's note to 2010 amendment.

containers and fuel tanks, "including when and what the agency knew vis-à-vis the issuance of

the SNUR," alleging a 2014 visit by EPA to Inhance's facility in West Chicago.  ECF No. 49 at

10.  But for three independent reasons, this information has no bearing on Inhance's proffered

defenses, and Inhance thus fails to "detail . . . how, if uncovered, [this information] would

preclude summary judgment."  *Abington Friends Sch.*, 480 F.3d at 255 n.3.

 First, Inhance itself has asserted multiple times in both responses to administrative

subpoenas and in filings in this case—including in a declaration by Mr. Subramanian Iyer,

Inhance's Executive V.P. for Research & Development—that neither it, the fluorination industry,

nor EPA knew during the rulemaking that fluorination of containers could form long-chain

PFAS.[8]  Because Defendant has admitted that EPA did not know at the time of the rulemaking

that fluorination of containers could form long-chain PFAS, it has no need to discover what EPA

knew as to its fluorination activities "vis-à-vis the issuance of the SNUR."

 Second, this information has nothing to do with Inhance's defense.  Inhance's claim is

that a SNUR cannot apply "to a preexisting use."  ECF No. 10 at 1.  That is, Inhance contends

that applying the Final Rule to its preexisting use, i.e., producing PFAS by fluorinating

containers, "exceed[s] . . . statutory authority."  *Id.*  Under Inhance's theory, it does not matter if

EPA had knowledge during the rulemaking as to whether fluorination could generate long-chain

---

[8] ECF 49-2, A-1; Iyer Decl. ¶ 22 ("*LCPFACs were not understood or known to have been produced from the fluorination of plastics articles-containers*, and thus could not have been deliberately produced by Inhance.") (emphasis added); *id.* ¶ 34 ("EPA received no comments during the five-year rulemaking process from others in the fluorination industry, users of fluorinated articles, or any other parties questioning whether the fluorination industry would be impacted by the Final Rule.  This is because *it was not understood by EPA or the fluorination industry that the fluorination of HDPE containers could result in the unintentional formation of LCPFACs*.") (emphasis added); ECF No. 27 at 7 (Inhance's Reply Brief in Support of its Motion to Dismiss the United States' Complaint) ("*But neither Inhance nor EPA had any idea that PFAS could be created as an unintended impurity during the fluorination process at the time the proposed rule was open for comment*.").

PFAS.  Instead, Inhance contends that *all* preexisting uses are exempt from SNURs, and any attempt to apply a SNUR to such a use goes beyond EPA's statutory authority.  Based on Inhance's statutory argument, EPA's knowledge of fluorination at the time of the rulemaking is not relevant.  Discovery on this issue is thus improper.  *See* WRIGHT & MILLER § 2008 (4th ed.).

Third, Inhance is not entitled to such discovery because any claim that EPA should have exempted fluorination from the Final Rule as an ongoing use is time barred.  Challenges to TSCA regulations must be filed "not later than 60 days after the date on which the rule is promulgated."  15 U.S.C. § 2618(a)(1)(A).  Courts have crafted an exception to similar statutory time bars, authorizing "substantive" challenges to rules—such as a claim that a rule exceeds statutory authority—after the limitations period runs.  *E.g.*, *JEM Broad. Co. v. F.C.C.*, 22 F.3d 320, 324-25 (D.C. Cir. 1994).  But "procedural" challenges relating to rules—like an argument that EPA's rulemaking *process* was defective because EPA did not consider "reasonably available" information, 15 U.S.C. § 2625(k)—are subject to statutory time bars.  Here, the limitations period accrued after the Final Rule was promulgated in 2020 and expired that year.  Last, discovery is improper because TSCA confines rule challenges to the administrative record.  15 U.S.C. § 2618(c)(1)(B) (incorporating administrative review standard in 5 U.S.C. § 706).

Next, Inhance asserts that, for its fair-notice defense, it needs discovery to obtain information concerning: (1) "EPA's interpretation of the SNUR and its application to the fluorination industry prior to March 2022" and (2) "communications EPA had with any state regulatory agencies . . . regarding the Anvil 10+10™ studies or other studies related to the presence of PFAS" in containers.  ECF No. 49 at 10 (trademark symbol added).  Inhance claims these documents may supports its "position that it lacked fair notice of the Government's interpretation of the SNUR."  *Id.*  As with its other arguments, Inhance misses the mark.

Fair notice concerns notice to the regulated public.  *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).  As a corollary, what matters in assessing compliance with this principle is the notice that the public has actually received.  *Gen. Elec. Co. v. U.S. E.P.A.*, 53 F.3d 1324, 1329 (D.C. Cir. 1995) (in assessing fair notice, courts typically "review[] the regulations and other *public* statements issued by the agency")  (emphasis added)); *see also F.T.C. v. Wyndham Worldwide Corp.*, 799 F.3d 236, 257 (3d Cir. 2015).  Conversely, what does not matter are documents that are neither public nor correspondence between an agency and a regulated entity subject to enforcement.  Because Inhance seeks non-public documents, its request is irrelevant to the issue of fair notice.  *See United States v. Farley*, 11 F.3d 1385, 1391 (7th Cir. 1993).  Moreover, at the latest, Inhance had notice that EPA interpreted the Final Rule as applying to its activities when EPA issued a Notice of Violation ("NOV") to Inhance on March 1, 2022, expressly notifying Inhance that its "fluorination of HDPE containers is a significant new use under the LCPFAC SNUR."  EFC No. 49-2 at A-223.  The NOV provided fair notice as a matter of law, and any request for discovery before (or after) issuance of the NOV is meritless.

Last, Inhance argues that its challenge to the Final Rule cannot be resolved now and instead requires discovery merely because it brings an as-applied challenge.  ECF No. 49 at 11.  In a footnote, Inhance hints at what is plain: this position conflicts with its argument in its motion to dismiss that, based only on the allegations in the complaint and as matter of law, applying the Final Rule to its fluorination process violates TSCA.  *See id.* at 11 n.1.  The United States has consistently argued that whether a statute—namely, TSCA—may validly apply to an undisputed set of facts presents a legal (rather than factual) question.  And such is for the Court to decide.

Inhance also misapprehends the import of asserting an as-applied, rather than facial, challenge to the Final Rule.  "A facial challenge considers" a regulation's "application to all conceivable parties, while an as-applied challenge tests the application of that [regulation] to the facts of a plaintiff's concrete case."  *iMatter Utah v. Njord*, 774 F.3d 1258, 1264 (10th Cir. 2014) (cleaned up).  "[T]he distinction between facial and as-applied challenges . . . goes to the breadth of the remedy employed by the Court."  *Citizens United v. FEC*, 558 U.S. 310, 331 (2010).  Inasmuch as Inhance seeks to invalidate the application of the Final Rule to its particular conduct only, its challenge is properly deemed as-applied.[9]  But simply incanting the phrase "as-applied challenge" does not open the doors to discovery—and the cases Inhance purports to rely on are not to the contrary (but are far afield from the facts of this case).

Take *Free Speech Coal., Inc. v. Att'y Gen. of U.S.*, 677 F.3d 519 (3d Cir. 2012).  There, members of the adult media industry brought, among other claims, an as-applied First Amendment challenge to federal criminal statutes regulating sexually explicit depictions.  *Id.* at 524.  The district court dismissed the case.  On appeal, the Third Circuit held first, that intermediate scrutiny applied to the plaintiffs' constitutional claims and second, that they "must be afforded the opportunity to conduct discovery and develop a record supporting their claim that the [s]tatutes burden substantially more speech than is necessary."  *Id.* at 537.  Discovery was necessary because resolving the claim required a fact-intensive balancing test in which the court would have to compare the amount and nature of plaintiffs' constitutionally-protected speech with plaintiffs' speech that implicated the government's interests.  *Id.* at 537.  Inhance's claim

---

[9] If Inhance brought a facial challenge, it would have to "'establish that no set of circumstance exists under which the Act would be valid'" *Artway v. Att'y Gen. of State of New Jersey*, 81 F.3d 1235, 1252 n.13 (3d Cir. 1996) (quoting *United States v. Salerno,* 481 U.S. 739, 745 (1987))—an argument Inhance has not made.

that the Final Rule cannot reach its "preexisting" use involves nothing like the fact-specific inquiry demanded by intermediate scrutiny.

Also inapposite is *Club Madonna, Inc. v. City of Miami Beach*, an Eleventh Circuit case cited by Inhance.  924 F.3d 1370 (11th Cir. 2019).  Reviewing a ruling on a motion to dismiss, the appeals court considered the *ripeness* of facial and as-applied constitutional challenges brought by a "strip club" to regulations and administrative actions against it.  *Id.* at 1380.  The court found both sets of claims to be justiciable, noting that the as-applied challenges "require[d] no more factual development to be ripe for review" given that the club alleged it was currently complying with unconstitutional regulations (i.e., its rights were presently being infringed).  *Id.* To the extent *Club Madonna* has any significance to this case, it supports that this matter is ripe.

Inhance's other circuit court citations do not concern the availability of discovery; instead, like *Club Madonna*, those cases addressed the ripeness of as-applied constitutional challenges to statutes but held that the claims at issue were premature because the alleged deprivations had yet to occur.  *See Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1310 (11th Cir. 2009) (pre-trial, as-applied challenge to a federal statutory-damages provision as unconstitutionally excessive was unripe); *Artway,* 81 F.3d at 1242 (constitutional challenges to statute requiring sex offenders to comply with community notification requirements were not ripe because the plaintiff had not yet submitted to the notification process).

Inhance's arguments in favor of denying summary judgment boil down to the complaint that it has not yet conducted discovery.  But there is no automatic right to discovery.[10]  Rather,

---

[10] Inhance asserts that the Government's position that discovery should proceed while the motion to dismiss is pending is "irreconcilable" with the argument that no discovery is needed on the issue of Inhance's liability.  ECF No. 49 at 11.  Not so.  The United States has explained that discovery is needed specifically "regarding the risks to human health and the environment

13

Inhance must adequately explain why it needs discovery to defeat summary judgment.  *See* FED. R. CIV. P. 56(d); *Abington Friends Sch.*, 480 F.3d at 255 n.3.  Inhance has failed to do so.[11]

### C.  Inhance's Asserted Fact Issues are Either Undisputed, Unsupported, or Legal Questions for the Court to Resolve.

Inhance erroneously contends that fact issues preclude summary judgment.  ECF No. 49 at 12-17.  Inhance points to three issues in particular: (1) whether its use of fluorination "was ongoing as of January 21, 2015, the date the SNUR was proposed;" (2) whether long-chain PFAS formed as a result of "fluorination constitute an impurity exempt from regulation or a byproduct subject to regulation;" and (3) "whether and when" it received "fair notice that the Government would seek to apply its interpretation of the SNUR to Inhance's fluorination" activities.  *Id.* at 12-13.  These are all matters of law that rest on undisputed facts.

### 1.  The United States Does Not Dispute that Inhance Has Continuously Produced Long-Chain PFAS by Fluorinating Containers.

First, the United States does not dispute that Inhance has continuously fluorinated containers since before the Rule was proposed on January 21, 2015, and that such fluorination has produced long-chain PFAS throughout this period.  Thus, there is no factual issue regarding whether Inhance's manufacture of long-chain PFAS as a result of fluorinating containers predates the Final Rule's proposal or whether this manufacturing has been continuous.  It is also undisputed that EPA did not receive any comments during the rulemaking period that fluorination could result in the formation of long-chain PFAS and that EPA therefore did not

---

caused by Inhance's continuing violations of TSCA."  ECF No. 25 at 2.  Those risks do not go to liability; rather, they concern the harm caused by Inhance's unlawful conduct.

[11] If the Court finds that discovery should be permitted under Rule 56(d), the United States asks the Court to follow the typical procedure and defer ruling on the motion or deny it without prejudice to the Government's right to renew the motion after the parties have had an adequate opportunity for discovery.  *See, e.g.*, *Bracy v. Pfizer Inc.*, 839 F. App'x 691, 694 (3d Cir. 2020); WRIGHT & MILLER, at § 2728 (4th ed.).

identify fluorination as an ongoing use.  ECF No. 49-2, Iyer Decl. ¶ 34; Final Rule, 85 Fed. Reg.

45109, 45119-20 (July 27, 2020) (listing the uses EPA recognized as ongoing); 40 C.F.R.

§ 721.10536(b)(5) (exempting identified ongoing uses from the Long-Chain PFAS Rule).  There

is no fact issue regarding the timeline of Inhance's fluorination activities that manufacture long-

chain PFAS.  Rather, the only issue Inhance has raised concerning its continuous manufacturing

of long-chain PFAS is whether the Final Rule may validly apply to its activities.  But this matter

of statutory interpretation presents a legal question, not a factual dispute.  *E.g.*, *Introna v. Allstate*

*Ins. Co.*, 850 F. Supp. 161, 164 (E.D.N.Y. 1993) ("Cases that contain no relevant factual disputes

and raise only questions of statutory construction 'present legal issues that may be resolved by

summary judgment.'" (quoting *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir.

1993)).

### 2. There are No Genuinely Disputed Facts as to Whether the Long-Chain PFAS Produced by Inhance are Byproducts or Impurities.

Second, Inhance asserts that there are fact issues regarding whether the long-chain PFAS

that its fluorination activities manufacture are "byproducts" or "impurities."  ECF No. 49 at 14-

16.  These terms are defined by regulation.  A byproduct is "a chemical substance produced

without a separate commercial intent during the manufacture, processing, use, or disposal of

another chemical substance or mixture."  40 C.F.R. § 720.3(d)[12]  By contrast, an impurity is "a

chemical substance which is unintentionally present with another chemical substance."  *Id.*

§ 720.3(m).  Once again, Inhance's argument is flawed: it is not the facts that are in dispute but

instead the application of undisputed facts to the regulatory definitions of "byproduct" and

---

[12] Title 40 of the Code of Federal Regulations, Part 721 is titled Significant New Uses of Chemical Substances.  The definitions section of that Part, 40 C.F.R. § 721.3, expressly incorporates the "definitions in . . . § 720.3."  Neither byproduct nor impurity are defined in § 721.3.  But both terms are defined in § 720.3 apply, so the definitions in that section apply.

"impurity."[13]  To be sure, Inhance does *claim* that there are underlying fact issues relating to whether its long-chain PFAS meet the definitions of byproduct or impurity.  But these asserted fact issues are unsupported and legally irrelevant.

Repeating the respective definitions of impurity and byproduct, Inhance asserts there are fact issues regarding "whether the [long-chain PFAS] are unintentionally present with another chemical substance" or "whether the [long-chain PFAS] are produced with a 'separate commercial intent,' and whether the [long-chain PFAS] are produced during the manufacture, processing, use, or disposal of another chemical substance."  ECF No. 49 at 15-16.  But Inhance provides no evidentiary support for its contention that fact issues exist.

Under Rule 56, Inhance was required to "support [its] assertion" that there are genuine disputes of fact "by either citing specific material in the record or showing that the material cited does not establish the absence of a genuine dispute."  *Collier v. Adams*, 602 F. App'x 850, 852-52 (3d Cir. 2015) (citing FED. R. CIV. P. 56(c)(1)).  Inhance did neither.  Rather, Inhance has conceded in its SNUN submissions that its fluorination of containers and fuel tanks produces long-chain PFAS that have no commercial function or application and do not contribute to the partially fluorinated polyethylene that Inhance intentionally manufactures.  *See* ECF No. 37 at 15-16; SUMF ¶ 14.  This Court is fully capable of drawing legal conclusions from these and

---

[13] *See McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 356 (1991) ("It is for the court to define the statutory standard.  'Member of a crew' and 'seaman' are statutory terms; their interpretation is a question of law."); *Evans v. United Arab Shipping Co. S.A.G.*, 4 F.3d 207, 213 (3d Cir. 1993) ("Once the underlying facts are established, and the rule of law is undisputed, the issue of whether the facts meet the statutory standard is an issue of law."); *Newell Cos., Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 763 (Fed. Cir. 1988) (observing in a patent infringement suit that "[a]ll of our precedent holds that, where the only issue is, as here, the application of the statutory standard of obviousness (35 U.S.C. § 103) to an established set of facts, there is only a question of law to be resolved by the trial judge").

other undisputed facts to determine whether the long-chain PFAS produced by Inhance are

byproducts, impurities, or both under TSCA regulations.

Moreover, Inhance's argument regarding whether the long-chain PFAS that it forms

constitute impurities is beside the point.  As Inhance notes, the pertinent regulations contain

specified exemptions from TSCA's SNUN requirements.  *See* 40 C.F.R. § 721.45.  Among these

is an exemption that applies when an entity "manufactures or processes the substance" that is

subject to a SNUR "*only* as an impurity."  *Id.* at § 721.45(d) (emphasis added).  Despite this

plain language, Inhance makes the blanket assertion that "impurities are not subject to the

notification requirements" under the Final Rule.  ECF No. 49 at 15.  Inhance arrives at this self-

serving conclusion by excising the word "only" from the exemption.  Having effectively

rewritten the regulation, Inhance claims to be exempt from the SNUN requirements.  But under

the actual text of the regulation, Inhance can only avail itself of this exemption if it manufactures

long-chain PFAS "only as an impurity."  40 C.F.R. § 721.45(d).  Even assuming the long-chain

PFAS that Inhance manufactures qualify as impurities, the exemption does not apply to Inhance.

That is because the long-chain PFAS—as Inhance admitted in its SNUN submissions—are *also*

byproducts.  *See* ECF No. 37 at 14-16.  Thus, the *only* impurity exemption does not apply, and

Inhance is subject to TSCA's notice-and-review process.

Beyond the plain text of the "only impurity" exemption, parallel regulatory exemptions

show that Inhance's argument is wrong.  The "only impurity" exemption is part of  a section on

exemptions to SNUN requirements.  *See* 40 C.F.R. § 721.45.  This exemption provision is a

section within Part 721, which is titled Significant New Uses of Chemical Substances.  Part 720

(the immediately preceding Part) is titled Premanufacture Notification and concerns "new

chemical substances."  40 C.F.R. Part 720.1.  Parts 720 and 721 both implement Section 5 of

17

TSCA.  Analogous to Part 721's exemption section, Part 720 contains a section that exempts specified substances (as opposed to Part 721's exemptions for *uses* of chemical substances) from premanufacture notice reporting requirements.  *Id.* § 720.30.

But unlike the exemption pertaining to impurities in Part 721, the impurity-related exemption in Part 720 expressly exempts "[a]ny impurity."  *Id.* § 720.30(h)(1).  EPA thus used the limiting modifier "only" before "impurity" in Part 721's exemption provision, 40 C.F.R. § 721.45(d), while employing the expansive modifier "any" before "impurity" in Part 720's related exemption provision, 40 C.F.R. § 720.30(h)(1).  This is strong textual evidence that the agency intended to create a much narrower exemption for impurities involving significant new uses.[14]  Relatedly, Part 720 also exempts from notice requirements "any byproduct which is not used for commercial purposes," *id.* § 720.30(h)(2), while this broad exemption is noticeably absent under the Part 721 exemptions, *see id.* § 721.45(e).  Inhance's reading is contrary to both the regulation's plain text and EPA's manifest intent.

### 3.   Inhance had Fair Notice that the Final Rule Could Apply to Its Fluorination Activities, and No Facts are Genuinely Disputed.

Inhance argues that there are factual issues regarding whether EPA provided fair notice that the Final Rule could apply to fluorination of containers.  ECF No. 49 at 16-17.  Once again, Inhance confuses matters of law and fact.  The issue of fair notice presents a quintessential legal question.[15]  That legal issue is whether Inhance had fair notice that its activities were proscribed

---

[14] *See Am. Raisin Packers, Inc. v. U.S.D.A.*, 221 F. Supp. 2d 1209, 1223 (E.D. Cal. 2002), *aff'd*, 66 F. App'x 706 (9th Cir. 2003) ("A review of other provisions in Title 7 reveals that the USDA knows how to write a regulation to add a specific intent element to a party's misrepresentation.  By choosing not to add a modifier to the word "misrepresentation" in section 52.54(a)(1), the USDA intended to not require that the misrepresentation be willful, deliberate, or intentional.").

[15] *See, e.g.*, *Howmet Corp. v. EPA*, 656 F. Supp. 2d 167, 170–71 (D.D.C. 2009), *aff'd*, 614 F.3d 544, 554 (D.C. Cir. 2010) (holding that issue of fair notice of EPA's

at the time it engaged in the conduct that is alleged to be unlawful.  *See City of Chicago v. Morales*, 527 U.S. 41, 58-59 (1999); *see also Skilling v. United States*, 561 U.S. 358, 412-13 (2010).  And that question is answered by consulting the text of the Final Rule; publicly available EPA statements on the agency's interpretation of the regulation; and communications between Defendant and EPA, namely, EPA's administrative subpoenas, Inhance's responses, and the March 2022 NOV.  *See supra* II.A.2. at 11.  No other facts could be relevant, nor does Inhance identify any such facts.  This Court need not pinpoint the precise moment when Inhance received fair notice.  There can be no question that, at least as of March 2022, EPA provided fair notice to Inhance that the agency viewed the Final Rule as applying to Inhance's fluorination activities.  Yet Inhance waited until November 2022 to attempt to submit the SNUNs required by TSCA.[16]

 Agency regulations are "presumptive[ly] valid[]."  *Patton v. Dir., Off. of Workers' Comp. Programs, U.S. DOL*, 763 F.2d 553, 560 (3d Cir. 1985).  Agencies are thus presumed to have provided fair notice of their regulations and interpretations of such.  Thus, a regulated entity "bears the burden of establishing such a lack of notice as an affirmative defense to liability."  *Nat'l Parks Conservation Ass'n, Inc. v. TVA*, 618 F. Supp. 2d 815, 831–32 (E.D. Tenn. 2009).

---

interpretation of a regulation is a legal issue); *cf. Harris v. City of Philadelphia*, 47 F.3d 1333, 1338 (3d Cir. 1995) (holding that due-process challenge presented a "question of law").

 [16] The United States seeks a declaration holding Inhance liable, in part, for violating TSCA before Inhance submitted its SNUNs.  Although the Government filed this action shortly after Inhance submitted its SNUNs, all relevant documents pertaining to fair notice predate Inhance's submission of SNUNs in December 2022.  So, a determination that Inhance had fair notice (whenever that occurred) necessarily means that it had fair notice *before* it submitted its SNUNs.  Thus, the Government may obtain the full scope of the declaratory judgment it requests regardless of what document or combination of documents the Court finds provided fair notice.

Based on the undisputed facts, Inhance had fair notice that its fluorination activities are covered by the Final Rule.[17]  Due process requires that a regulation give adequate notice to the regulated public of a rule's substance; absent such notice, an entity may not be subject to adverse action for failure to comply.  *See Howmet Corp. v. EPA*, 614 F.3d 544, 553 (D.C. Cir. 2010).

In evaluating fair notice, courts consider "whether the regulated party received, or should have received, notice of the agency's interpretation in the most obvious way of all: by reading the regulations."  *Id.* (quoting *Gen. Elec. Co.*, 53 F.3d at 1329).  Also relevant to the fair-notice inquiry is agency guidance interpreting regulations and any communications between an agency and a regulated entity.[18]

If a regulated entity acting in good faith would be able to identify with "ascertainable certainty" the standards with which the agency expected it to conform, then the agency has provided fair notice of its interpretation of a regulation.  *Id.*  The "ascertainable certainty" standard does not require an agency to define how a given regulation applies to every set of facts; adjudication serves that function.  *See United States v. Cinemark USA, Inc.*, 348 F.3d 569, 580 (6th Cir. 2003); *Ward v. Rock Against Racism,* 491 U.S. 781, 794 (1989).

Start with the text of the regulation.  The Final Rule expressly identifies the chemical substances that are subject to it.  40 C.F.R. § 721.10536(b)(1)-(3).  And the significant new uses of long-chain PFAS covered by the Final Rule broadly and unambiguously apply to the

---

[17] To the extent Inhance continues to challenge whether the proposed rulemaking gave adequate notice that EPA would require notification of Inhance's continuing uses in order for such uses to be exempted, its argument fails for the reasons discussed in the United States' opposition to the motion to dismiss.  ECF No. 25 at 24-27.

[18] *See, e.g.*, *Nat'l Oilseed Processors Ass'n v. OSHA*, 769 F.3d 1173, 1183 (D.C. Cir. 2014) (combination of Final Rule and agency guidance provided fair notice); *Wyndham Worldwide Corp.*, 799 F.3d at 257.

"manufacture" of certain long-chain PFAS "*for any use*."  40 C.F.R. § 721.10536(b)(4)(iii), (iv) (emphasis added).  The regulation need not spell out every possible use of long-chain PFAS that is encompassed by the expansive phrase "any use."  The Final Rule explicitly lists those uses that *are* exempt; fluorination is not among them.  *See* 40 C.F.R. § 721.10536(b)(5).

It is of no moment whether Inhance was aware that it was engaged in a significant new use under the Final Rule—what does matters is that the Final Rule provided "ascertainable certainty" of what conduct was regulated.  *Howmet Corp.*, 614 F.3d at 553.  In short, given the regulation's clear terms, Inhance had fair notice since July 27, 2020—the date the Final Rule was promulgated—that its activities could be subject to the Final Rule.  *See* 85 Fed. Reg. 45109.

Additionally, in January 2021, EPA issued an administrative subpoena to Inhance because the agency "identified products manufactured, processed or used" by Inhance that "potentially contain . . . (PFAS) regulated under the T[SCA]."  ECF No. 49-2 at A-216.  In its February 8, 2021 response, Inhance stated that it "does not believe that its processes or products are subject to the EPA's PFAS SNUR."  ECF No. 37-1 at A-41.  Inhance's response evinces that it understood that EPA may view its activities as being subject to the Final Rule; that is, it was evident to Inhance that the agency might interpret the Final Rule as applying to it.  *Cf. Gen. Elec. Co.*, 53 F.3d at 1329 (observing that, in many cases, an agency's pre-enforcement efforts to bring about compliance with its regulations provide adequate notice).[19]

Inhance received even more notice.  On March 1, 2022, EPA issued an administrative NOV to Inhance.  The NOV notified Inhance that it "was in violation" of the Long-Chain PFAS Rule as a result of its "fluorination of HDPE containers."  ECF No. 49-2 at A-223.

---

[19] Indeed, Inhance admits that EPA directly notified "Inhance about EPA's interpretation of the SNUR" when "it began investigating Inhance's fluorination process in December 2020." ECF No. 49-1 at 11 ¶ 7.

Further, later in March 2022, EPA issued an open letter to "Manufacturers, Processors, Distributors, Users, and Those that Dispose of Fluorinated Polyolefin Containers." *Id.* at A-227. This document explained that "EPA considers the manufacturing of certain PFAS from the fluorination of polyolefins," i.e., types of plastics, "to be a significant new use under TSCA." *Id.* at 228.

Regardless of whether the Court considers the Long-Chain PFAS Rule itself or the regulation's text in conjunction with the agency's subsequent open letter and correspondence with Inhance, the result is the same: Inhance received sufficient—indeed, ample—notice that its conduct could be subject to the Final Rule before it finally initiated the SNUN review process in November 2022.[20]

### 4.  Inhance Does Not Qualify for the Article Exemption.

Last, the United States replies to Inhance's single-sentence, unsupported assertion that, among other things, it is only subject to the SNUR requirements if "the technology is applied to a chemical substance rather than an article." ECF No. 49 at 12.  Although vague, it appears that Inhance may be indirectly suggesting, and may later assert, that it is eligible for the article exemption, *see* 40 C.F.R. § 721.45(f).[21]  But for two reasons, such an argument would fail.

---

[20] To the extent the Court relies on EPA's open letter referenced above, it does not bear on the issue of fair notice in this *judicial* action that the *administrative* NOV preceded that letter by a matter of weeks.  To the contrary, the fact that Inhance received the administrative NOV nine months before it submitted SNUNs and before the Government filed this judicial action only underscores the deficiency in Inhance's fair notice argument.

[21] Under TSCA's regulations, an "[a]rticle means a manufactured item: (1) Which is formed to a specific shape or design during manufacture; (2) Which has end use function(s) dependent in whole or in part upon its shape or design during end use; and (3) Which has either no change of chemical composition during its end use or only those changes of composition which have no commercial purpose separate from that of the article and that may occur as described in § 720.30(h)(5), except that fluids and particles are not considered articles regardless of shape or design."  40 C.F.R. § 720.3(c).

First, the article exemption applies only to an entity that "*imports* or *processes* the substance"—i.e., the chemical substance subject to a SNUR—"as part of an article." *Id.* (emphasis added).  For the article exemption to apply to Inhance, Defendant must either import or process long-chain PFAS as part of an article.  Inhance produces long-chain PFAS as a result of its own fluorination activities in the United States, and thus this activity does not constitute importing these chemical substances.

Turning to processing, TSCA defines "process" as "the preparation of a chemical substance or mixture, *after its manufacture*, for distribution in commerce . . . as part of an article containing the chemical substance or mixture."  15 U.S.C. § 2602(13) (emphasis added).  Since Inhance's long-chain PFAS are formed during fluorination, Inhance does not "prepare" these chemical substances, nor has Defendant asserted or provided evidence that it "prepares" long-chain PFAS after manufacturing them.

"Preparation" is "the action or process of making something ready for use or service or of getting ready for some occasion, test, or duty."  *Preparation*, MERRIAM-WEBSTER (online ed. July 2023), https://www.merriam-webster.com/dictionary/preparation.[i]  Inhance has admitted that its long-chain PFAS do not "serve a functional purpose nor confer any commercial benefit," ECF No. 49-2 at A-11, Iyer Decl. ¶ 24, and that such PFAS are "unwanted."  ECF No. 37-1, at A-203, Ex. 16; A-207, Ex. 17.  And Inhance has provided no evidence that it does *anything* to the long-chain PFAS to "get[]" them "ready" for some purpose after their manufacture.  Because Inhance neither imports nor processes long-chain PFAS as part the containers that it fluorinates, the article exemption does not apply.

Second, regardless of Inhance's import or processing activities, it undisputedly produces—i.e., *manufactures*—long-chain PFAS, and its manufacturing is not exempt.  Here, the

United States seeks declaratory relief concerning Inhance's *manufacture* of long-chain PFAS. And although 40 C.F.R. § 721.45 contains certain exemptions for manufacturing, none apply here. *See supra* Part II.C.2. In short, Inhance's manufacturing of long-chain PFAS is subject to the SNUN requirements. It is irrelevant whether Inhance may also, separately, process or import long-chain PFAS as part of an article: since Inhance manufactures long-chain PFAS, it is subject to TSCA's notice-and-review process. *See* ECF No. 37 at 4-5.[22]

### United States' Response to Intervenor-Plaintiffs' Motion for Summary Judgment

The Intervenor-Plaintiffs have moved for summary judgment and entry of an injunction. ECF No. 42. The United States agrees with the Intervenor-Plaintiffs insofar as they argue that Inhance is liable for past and continuing violations of Section 15(1) of TSCA, 15 U.S.C. § 2614(1), by failing to comply with Section 5(a) of TCSA, 15 U.S.C. § 2604(a), as a result of Defendant's manufacturing of long-chain PFAS before Inhance submitted SNUNs and before EPA has issued determinations on those SNUNs. Thus, the United States concurs with Intervenor-Plaintiffs that the Court should issue a declaratory judgment to that effect.

The United States does not express any view at this time on the merits of the Intervenor-Plaintiffs' request for injunctive relief. The government asks, though, that the Court resolve its and the Intervenor-Plaintiffs' overlapping requests for a declaratory judgment on the issue of

---

[22] That manufacture is not among the activities covered by the article exemption is plain from its text: manufacture is not mentioned, so it is not exempted. This conclusion is reenforced by that fact that several other exemptions in the same regulatory section expressly exempt manufacturing. *Compare* 40 C.F.R. § 721.45(f) (exempting importing or processing of a substance as part of an article), *with id.* § 721.45(d) (exempting *manufacturing* or processing a substance only as an impurity), *id.* § 721.45(e) (exempting *manufacturing* or processing a substance only as a byproduct in limited circumstances); *id.* § 721.45(g) (exempting *manufacturing* or processing a substance solely for export in certain circumstances). Because manufacturing is not included in the article exemption but is included in other exemptions, manufacturing as part of an article is not an exempt activity. *See United States v. Nasir*, 17 F.4th 459, 471–72 (3d Cir. 2021) ("As a familiar canon of construction states, *expressio unius est exclusio alterius*: the expression of one thing is the exclusion of the other.").

Inhance's past and continuing liability under TSCA before resolving the Intervenor-Plaintiffs'

request for an injunction.  This sequencing of adjudication would resolve the pending motions in

the most efficient manner.  And a declaratory judgment holding Inhance liable for violating

TSCA may help lead to an earlier resolution of the case.[23]

## CONCLUSION

For these reasons, the United States respectfully asks the Court to grant its motion for

partial summary judgment and issue a declaratory judgment holding Inhance liable under TSCA.


Dated: July 14, 2023            Respectfully submitted,

                                **FOR THE UNITED STATES OF AMERICA**

                                **TODD KIM**
                                Assistant Attorney General
                                Environment and Natural Resources Division
                                United States Department of Justice

---

[23] *See Conley v. Dauer*, 463 F.2d 63, 66 n.14 (3d Cir. 1972) (observing that "voluntary compliance with the orders of Federal courts is the norm and *desideratum*" and that the court "expect[ed Defendant] to fully comply with the District Court's declaratory judgment" (cleaned up)); *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 919 F.3d 638, 648 (1st Cir. 2019) ("[N]oncompliance with declaratory judgments is deemed inappropriate[.]"); *see also Berger v. Xerox Corp. Ret. Income Guarantee Plan*, 338 F.3d 755, 763 (7th Cir. 2003) (in a suit under the Employee Retirement Income Security Act, 29 U.S.C. § 10001 *et seq.*, noting that the grant of a declaratory judgment may enable the parties "to negotiate the concrete relief necessary to make the plaintiffs whole without further judicial proceedings") (Posner, J.).

 */s/ Richard Gladstein*
**RICHARD GLADSTEIN**, D.C. Bar #362404
Senior Counsel
**JONAH SELIGMAN**, La. Bar #38890
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
(202) 514-1711
Richard.Gladstein@usdoj.gov
Jonah.Seligman@usdoj.gov


**JACQUELINE C. ROMERO**
United States Attorney
Eastern District of Pennsylvania


**GREGORY B. DAVID**
Chief, Civil Division


**ERIN E. LINDGREN**
Assistant United States Attorney
615 Chestnut Street, #1250
Philadelphia, Pennsylvania 19106
Erin.Lindgren@usdoj.gov

Of Counsel:
**N. LINSDAY SIMMONS**
**ALEXANDER DERGARABEDIAN**
Attorney-Advisors
Waste and Chemical Enforcement Division | Office of Civil Enforcement, OECA
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C
(202) 564-3223
Simmons.Lindsay@epa.gov
Dergarabedian.Alexander@epa.gov

## <u>CERTIFICATE OF SERVICE</u>

The foregoing Combined Reply in Support of the United States' Motion for Partial

Summary Judgment and Response to the Intervenor-Plaintiffs' Motion for Summary Judgment

has been filed electronically using the ECF system and is available for viewing and downloading

from the ECF system.  Counsel for Plaintiff has also served by email an electronic copy of the

foregoing Combined Reply in Support of the United States' Motion for Partial Summary

Judgment and Response to the Intervenor-Plaintiffs' Motion for Summary Judgment on counsel

for Defendant and counsel for Plaintiff-Intervenors.


DATE: July 14, 2023                             */s/ Richard Gladstein*
                                                            RICHARD GLADSTEIN