# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff*, | ) | Civil Action No. 5:22-cv-05055-JFM |
| | ) | |
| v. | ) | |
| | ) | |
| INHANCE TECHNOLOGIES, LLC, | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |
| _____ | ) | |

## PLAINTIFF-INTERVENORS BRIEF IN RESPONSE TO THE COURT'S DECEMBER 4, 2023 ORDER DIRECTING THE PARTIES TO ADDRESS MOOTNESS

Plaintiff-Intervenors Center for Environmental Health (CEH), Public Employees for Environmental Responsibility (PEER) and Jay de la Rosa submit this Brief in response to the Court's December 4, 2023 Order seeking the parties' views on the mootness of all or part of this case.

## TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 3

   I.    TSCA Provisions and the LCPFAC SNUR ........................................................ 3

   II.   Inhance's SNUR Violations and Plaintiffs' Suits ............................................... 4

   III.  Motions Pending Before the Court ...................................................................... 5

   IV.  EPA's December 1 Orders .................................................................................. 7

      a.    The TSCA 5(f) Order. ................................................................................. 7

      b.    The TSCA 5(e) Order. ................................................................................. 8

      c.   Effective Date. ............................................................................................. 9

ARGUMENT ................................................................................................................... 10

   I.    All the Pending Motions Are Moot and This Case Must be Dismissed ................. 10

   II.   TSCA Confers Exclusive Jurisdiction to Review the 5(e) and 5(f) Orders on the
       Courts of Appeals ............................................................................................... 14

CONCLUSION ............................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Commonwealth of Va. ex rel. Coleman v. Califano*, 631 F.2d 324 (4th Cir. 1980) ...................... 10

*Conoco, Inc. v. Skinner*, 970 F.2d 1206 (3d Cir. 1992) ................................................. 15

*Del Monte Fresh Produce Co. v. United State*s, 565 F. Supp. 2d 106, (D.D.C. 2008) ........... 10

*Erie v. Pap's A.M.*, 529 U.S. 277 (2000) ......................................................................... 10

*In re Surrick*, 338 F.3d 224 (3d Cir. 2003) .................................................................... 12

*Jersey Cent. Power & Light Co. v. New Jersey*, 772 F.2d 35 (3d Cir. 1985) ............................... 10

*Jones v. Stitt*, No. 22-6094, 2023 U.S. App. LEXIS 2632 (10th Cir. Feb. 2, 2023) ...................... 12

*Los Alamos Study Grp. v. Dep't of Energy*, 692 F.3d 1057 (10th Cir. 2012) ............................... 13

*Los Alamos Study Grp. v. United States DOE*, 794 F. Supp. 2d 1216 (D.N.M. 2011) ................ 13

*Murphy v. Hunt*, 455 U.S. 478 (1982) ........................................................................... 10

*Nuclear Info. & Resource Service v. United States Dep't of Transp. Research & Special*
   *Programs Admin*, 457 F.3d 956 (9th Cir. 2006) ......................................................... 14

*Otter Point Dev. Corp. v. U.S. Army Corps of Eng'rs, Balt. Dist.*, 116 F. Supp. 2d 648 (D. Md.
   2000) .............................................................................................................. 12

*Stone v. INS*, 514 U.S. 386, (1995) .............................................................................. 15

*White v. Gilley*, 2023 U.S. Dist. LEXIS 163222 (E.D. Ky. 2023) ................................................. 13

*Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208 (10th Cir. 2012) ............................... 12

**Statutes**

15 U.S.C. § 2604(a)(1)(B)………………………………………………………………..3,4,11

15 U.S.C. § 2604(a)(2)........................................................................................ 3

15 U.S.C. § 2604(a)(3)………………………………………………………………...1,3,7

15 U.S.C. § 2604(a)((3)(B)………………………………………………………………...1,8

15 U.SC. § 2604(c)………………………………………………………………………..6

15 U.S.C. § 2604(e) ……………………………………………………………… 1,3, 9

15 U.S.C. § 2604(f)(1) ………………………………………………………… 1,3, 8

15 U.S.C. § 2616…………………………………………………………………...4.5,6,14

15 U.S.C. § 2618(a)(1)(A) …………………………………………………… 2,5,14

15 U.S.C. § 2619………………………………………………………………… 5,6,14

## Other Authorities

85 Fed. Reg. 45109 ……………………………………………………………………… 4

## Regulations

40 C.F.R. § 721.10536(b)(4)(ii) …………………………………………………… 4

**INTRODUCTION**

On December 1, 2023, Plaintiff United States, on behalf of the Environmental Protection

Agency (EPA), submitted a "Notice of EPA's Issuance of Orders After Review of Inhance's

Significant New Use Notices." ECF No. 68 (EPA Notice). The notice informed the Court that

EPA had completed its review of the Significant New Use Notices (SNUNs) submitted by

defendant Inhance Technologies (Inhance) under section 5(a)(1) of the Toxic Substances Control

Act (TSCA) and issued two orders. Together, these orders – one under TSCA section 5(e) and the

other under section 5(f) – prohibit Inhance from manufacturing nine species of long-chain

perfluoroalkyl carboxylate (LCPFAC) substances subject to the July 2020 Significant New Use

Rule (SNUR) at issue in this case. The orders are based on EPA's determinations that three

LCPFACs present an unreasonable risk of injury under TSCA section 5(a)(3)(A) and six

LCPFACs may present an unreasonable risk under section 5(a)(3)(B)(i)(I). At the same time,

EPA extended the SNUN review period 90 days, until February 28, 2024. The orders will take

effect on that date.

On December 1, Inhance filed "Defendant's Notice of Issuance of Unilateral Order and

90-Day Suspension of SNUN Review Period," ECF 69 (Inhance Notice). Inhance acknowledges

that the conclusion of SNUN review and issuance of the EPA orders effectively moot Plaintiff's

pending motion for partial summary judgment (ECF 37) and Plaintiff-Intervenors' motion for

summary judgment and injunctive relief (ECF 42). While admitting that the only pending

motions seeking relief in this case are moot, Inhance nevertheless claims that its motions to

dismiss the complaints (ECF 10 and 42) are not moot and should be decided by the Court. It

maintains that this ruling is needed because the orders "did not address the legal issues raised in

1

Inhance's motions to dismiss [and] the issues presented in the motions to dismiss are now squarely before this Court." Inhance Notice at 2. However, there is nothing in mootness jurisprudence that allows a case to proceed based on the pendency of a defendant's motion to dismiss moot claims. If the plaintiffs' claims are moot, the Court has no jurisdiction over them and they should simply be dismissed. There is no need, and no jurisdiction, to consider a defendant's motion to dismiss them on grounds other than mootness.

Plainly, Inhance is no longer seeking to achieve the usual goal of a motion to dismiss: to prevent the Court from granting the relief sought. The relief sought in this case – that Inhance cease manufacture of LCPFACs in violation of the SNUR -- is now redundant and would no longer have any real world meaning, given that the EPA orders explicitly require Inhance to stop LCPFAC manufacture. Instead, Inhance plainly has another purpose – to obtain a determination from this Court that the EPA orders are based on SNUR requirements that are not applicable to its fluorination process and are therefore invalid under TSCA. But this amounts to a collateral attack on the orders, which are not at issue in this case and are only reviewable by a U.S. Court of Appeals under TSCA section 19(a)(1)(A), 15 U.S.C. § 2618(a)(1)(A). Indeed, on December 7, Inhance filed a petition for review of the orders with the U.S. Court of Appeals for the Fifth Circuit. Since this Court would lack jurisdiction to review the orders directly, it should refuse to circumvent court of appeals jurisdiction under the pretext of resolving issues in this case which are no longer justiciable in their own right.

The complaints of the United States and Plaintiff-Intervenors sought to prevent Inhance from continuing to manufacture LCPFACs before EPA had fully reviewed the SNUNs, made determinations of unreasonable risk and issued orders eliminating such risks. However, these tasks have now been accomplished. As a result, as soon as the orders take effect on February 28,

2024, they and not the SNUR will define Inhance's ongoing and future obligations under TSCA. Thus, a judicial decree directing Inhance to comply with the SNUR -- the relief sought in both complaints -- will no longer serve a meaningful purpose. Under these circumstances, Plaintiff-Intervenors agree that their motion for summary judgment and injunctive relief is moot and cannot be decided by the Court. If there is no longer a case or controversy over whether to compel Inhance to comply with the TSCA SNUR, then its defenses to liability for violating TSCA are no longer justiciable in this case and its motions to dismiss are also moot. Put most simply, a motion to dismiss moot claims is itself moot. Since there are no remaining live issues, the case should be dismissed.

## BACKGROUND

### I.       TSCA Provisions and the LCPFAC SNUR

Section 5(a)(2) of TSCA, 15 U.S.C. § 2604(a)(2), authorizes EPA to designate by rule certain uses of chemical substances as "significant new uses." Under section 5(a)(1)(A)(ii), "no person may manufacture or process any chemical substance for a use which the Administrator has determined . . . is a significant new use" without complying with the requirements of section 5(a)(1)(B). To satisfy these requirements, the manufacturer or processor must submit a notice to EPA of its intent to manufacture or process the substance for the significant new use at least 90 days before commencing these activities. Manufacture or processing of the SNUN substance cannot begin until (1) EPA reviews the notice, (2) makes a risk determination for the substance under section 5(a)(3), and (3) based on that determination, issues an order imposing restrictions under sections 5(e) or 5(f) where necessary to eliminate any unreasonable risk that the substance does or may present.

3

On July 27, 2020, EPA finalized the LCPFAC SNUR. 85 Fed. Reg. 45109. The SNUR "requires persons to notify EPA at least 90 days before commencing the manufacture (including import) or processing of these chemical substances for the significant new uses described in this notice." A "significant new use" of LCPFACs is defined as any "[m]anufacture (including import) or processing for any use after December 31, 2015." 40 C.F.R. § 721.10536(b)(4)(ii).

## II.   Inhance's SNUR Violations and Plaintiffs' Suits

Starting in late 2020, a growing body of data, including testing by EPA, demonstrated the formation of nine LCPFACs during Inhance's fluorination of plastic containers.[1] EPA informed Inhance that it was in violation of the SNUR in March of 2022 and the company filed SNUNs on December 30, 2022, for the nine LCPFACs detected in testing of fluorinated containers. However, contrary to TSCA, Inhance continued to manufacture the nine LCPFACs even though EPA had not completed its review of the SNUNs, made unreasonable risk determinations, and developed orders under section 5(e) or 5(f) addressing any unreasonable risks.

The complaints in this case focused on alleged violations of TSCA stemming from Inhance's continued manufacture of substances subject to the LCPFAC SNUR during the SNUN review period. This is an express violation of section 5(a)(1)(B) of TSCA. Thus, the Government complaint is based on section 17 of TSCA, 15 U.S.C. § 2616, which authorizes equitable relief in suits by the United States in the district courts to prevent *ongoing* statutory violations. ECF 3.[2] The complaint sought a declaration that Inhance was violating TSCA by continuing to manufacture LCPFACs before completion of EPA's SNUN review and requested an injunction to

---

[1] Memorandum of Intervenor-Plaintiffs In Support of their Motion for Summary Judgment (ECF 42) at 13-18.
[2] The unredacted complaint was unsealed by order of the court on January 19, 2023, ECF No. 8.

stop that violation. Gov. Com. at 15. Similarly, the Plaintiff-Intervenors' complaint invoked

section 20 of TSCA, 15 U.S.C. § 2619, authorizing citizens suits to seek equitable relief

restraining continuing non-compliance with TSCA, and alleged that Inhance was unlawfully

engaged in manufacture, processing and distribution of LCPFACs before EPA had completed its

SNUN review and taken regulatory action. ECF 36 at. 3, ¶ 8. Like the Government, Plaintiff-

Intervenors' complaint sought a declaration that Inhance's ongoing LCPFAC production was

violating TSCA. The complaint also asked for an injunction restraining these activities until EPA

had completed its review of the SNUNs and taken follow-up actions warranted under TSCA. *Id.*

at 27.

Nowhere did the two complaints seek to enforce orders that EPA might issue after

completing its review of the SNUNs, and in any event the Court would lack jurisdiction to

restrain violations of TSCA that were then and are now purely speculative. Similarly, since

sections 17 and 20 of TSCA only authorize suits to remedy ongoing violations of the law, they

are not proper vehicles for *reviewing* the legal validity of *new* EPA actions, such as the December

1 orders, which are subject to judicial challenge exclusively in the courts of appeals under TSCA

section 19.

### III.    Motions Pending Before the Court

In its February 21, 2023 and May 24, 2023 motions to dismiss the Complaints, ECF 10

and 40, Inhance made two arguments: (1) Plaintiffs' claims were not ripe because EPA had not

completed its review of the SNUNs;[3] and (2) applying the SNUR to Inhance's fluorination

---

[3] This first argument is obviously moot because EPA has now completed its review of the
SNUNs.

5

process exceeded EPA's authority under TSCA because fluorination was not a "new use" and was in any case exempt from the SNUR since the LCPFACs formed during the process were "impurities" and not "byproducts."

In its May 16, 2023 motion for partial summary judgment, the United States sought a declaration that Inhance's ongoing production of LCPFACs was a continuing violation of TSCA but not an injunction to stop the violation. ECF 37. The motion argued that the undisputed facts showed that Inhance was producing LCPFACs during the fluorination of plastic containers and that its activities were prohibited by the SNUR while its SNUNs were under review by EPA.

On June 12, 2023, Plaintiff-Intervenors moved for full summary judgment and, unlike the Government, also sought injunctive relief. ECF 42. The motion argued that Inhance's liability for violating the SNUR was established by the undisputed facts and the Court was obligated under Supreme Court precedent to restrain these ongoing violations under sections 17 and 20 of TSCA.

After further briefing, the Court held a hearing on the pending motions on August 23, 2023 and took the motions under advisement. At the Court's direction, the United States filed a series of reports detailing the status of EPA's SNUN review. ECF 63-67. These reports indicated that, at EPA's request, Inhance agreed to multiple 15-day extensions of the SNUN review period through November 30, 2023 to enable EPA to complete its review of additional data which the Agency had asked the company to submit. The following day, EPA issued two unilateral orders to Inhance and published a Federal Register notice under section 5(c) of TSCA extending the SNUN review period for 90 days.[4]

---

[4] Together with its risk assessment, EPA posted redacted versions of the two orders on its Website on December 4. https://www.epa.gov/reviewing-new-chemicals-under-toxic-substances-

IV.     **EPA's December 1 Orders**

      a.   **The TSCA 5(f) Order.**

The first of the December 1 orders provides that Inhance "is prohibited from the manufacture, processing, distribution in commerce, use, or disposal of the SNUN Chemical Substances in the United States" during the fluorination of plastic containers, the significant new use for which the SNUNs were submitted. 5(f) Order at 1. The order applies to three of the LCPFACs based on EPA's determination under TSCA section 5(a)(3)(A) that their "manufacture, processing, distribution in commerce, use, and disposal . . . presents an unreasonable risk of injury to health or the environment." *Id.* at 3. This determination is based on a comprehensive risk assessment of the three LCPFACs which, as summarized in the order, concludes in relevant part that:

> Because of the persistent and bioaccumulative nature of these PFAS, exposure to each SNUN Chemical Substance will continue over time, long after the immediate exposure associated with their use.
>
> EPA's recent review by the Office of Water under the Safe Drinking Water Act states that human epidemiological and animal toxicity studies showed the identified hazards of PFOA are so significant that there are no safe levels of exposure. Based on EPA's latest science related to PFDA, EPA has developed a proposed toxicity assessment that shows that it is highly toxic.
>
> The persistence, bioaccumulation and toxicity of the SNUN Chemical Substances has resulted in an existing burden in humans, environmental organisms, and the environment.
>
> The Significant New Use of the SNUN Chemical Substances will result in releases of PFOA, PFNA, and PFDA and additional human and environmental exposures to PFOA, PFNA, and PFDA will occur as a result of these uses. . . These exposures are the result of leaching or migration of the SNUN Chemical Substances from fluorinated, plastic storage containers over time into fuel storage tanks and fuel tanks, various consumer applications (i.e., REDACTED), aerial/ground fogger pesticides (which involve direct application in

control-act-tsca/epa-orders-issued-inhance.   Its notice extending the review period appeared at 88 Federal Register 83941 (Dec. 1, 2023).

the environment), automotive products (i.e. REDACTED) and a wide variety of other consumer and industrial uses. Several uses result in direct application in the environment.

*Id.* at 3-6. In light of its determinations of unreasonable risk, EPA based the order on section 5(f)(1) of TSCA, 15 U.S.C. § 2604(f)(1), under which the Agency must prohibit or restrict SNUN substances "to the extent necessary to protect against such [unreasonable] risk." As the order explains, this protection could only be achieved by an absolute ban of production of the SNUN chemicals during fluorination:

> A prohibition on the manufacture of the SNUN Chemical Substances is required because the risk cannot otherwise be adequately mitigated… (1) even small releases of PBT PFAS into the environment over time can contribute to considerable exposure and potential risk; (2) such releases can occur at any point during the lifecycle of a fluorinated container, from manufacture to disposal. As a result, EPA determined it cannot control potential exposures to the SNUN Chemical Substances through means other than a prohibition on the manufacture of these substances. Based on concerns for persistence, bioaccumulation, and hazards identified in the assessment of the SNUN Chemical Substances, prohibiting manufacture is necessary to ensure that the order is protective against an unreasonable risk of injury to health or the environment.

*Id.* at 5-6.

> **b.   The TSCA 5(e) Order.**

The second EPA order prohibits manufacture, processing, distribution in commerce and disposal of the six other LCPFACs for which Inhance submitted SNUNs. However, this order is based on a determination under TSCA section 5(a)(3)(B)(ii)(I), that "in the absence of sufficient information to permit EPA to make a reasoned evaluation of the health and environmental effects of the" SNUN substances, their "manufacture, processing, distribution in commerce, use, or disposal of . . . may present an unreasonable risk of injury to health or the environment." 5(e) Order at 3.

Relying on EPA's detailed risk assessment, the order notes the "persistent and bioaccumulative nature of these PFAS" and underscores that "additional human and

environmental exposures" will occur as "the result of leaching or migration of the SNUN

Chemical Substances from fluorinated, plastic storage containers over time" into numerous

products with a wide range of consumer and industrial applications. *Id*. at 4. However, the order

concludes that the six LCPFACs cannot be definitively found to present an unreasonable risk at

this time because "[t]here is insufficient data relating to physical chemical properties,

bioaccumulation and toxicity studies for human health and environmental receptors to fully

characterize the risk." *Id*. For this reason, the order is based on TSCA section 5(e), 15 U.S.C. §

2604(e), which authorizes restrictions on manufacture and other activities where substances

"may present" an unreasonable risk but available information on the risk is insufficient.

Consistent with this approach, the order requires that a "full suite of testing be completed

and submitted to EPA for review prior to manufacture." *Id*. at 5. It explains that:

> EPA is not allowing manufacture of the SNUN Chemical Substances to commence while
> testing is being conducted. Based on concerns for persistence, bioaccumulation, and
> hazards identified in the assessment of the SNUN Chemical Substances, prohibiting
> manufacture while upfront testing is conducted is necessary to ensure that the order is
> protective against an unreasonable risk of injury to health or the environment until EPA
> has sufficient information to better determine unreasonable risk.

*Id.* After receiving the results of the required testing, "EPA will reevaluate the risks and may

require additional testing or impose restrictions to address any identified unreasonable risks."

### c.  Effective Date.

As required by TSCA,[5] the requirements of both orders will take effect on February 28,

2024, the expiration date of EPA's December 1, 2023, 90-day extension of the SNUN review

period for the nine LCPFACS. 5(f) Order at 8; 5(e) Order at 13.

---

[5] Sections 5(e)(1)(A) and 5(f)(3)(A) provide that orders for SNUN substances "shall take effect
on the expiration of the applicable review period."

**ARGUMENT**

**I.      All the Pending Motions Are Moot and This Case Must be Dismissed**

A federal court lacks subject-matter jurisdiction to decide a case that is moot because it no longer presents a case or controversy as required by Article III of the Constitution. *Commonwealth of Va. ex rel. Coleman v. Califano*, 631 F.2d 324, 326 (4th Cir. 1980). There is no case or controversy, and a suit is moot, "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (internal quotation marks and citation omitted). Thus, a case is moot when it is impossible for a court to grant "any effectual relief whatever" to the prevailing party. *Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000). According to the Third Circuit, "the central question of all mootness problems is whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief," thereby "divest[ing] this Court of Article III jurisdiction because it no longer presented a case or controversy susceptible to judicial resolution." *Jersey Cent. Power & Light Co. v. New Jersey*, 772 F.2d 35, 39 (3d Cir. 1985) When "events have so transpired that the controversy has ended and there is no remedy for the court to impose, a controversy is moot unless one of the exceptions to mootness applies." *Del Monte Fresh Produce Co. v. United State*s, 565 F. Supp. 2d 106, 110 (D.D.C. 2008).[6]

---

[6] Regarding one of the established exceptions to mootness, the Third Circuit has explained that "since this case involves governmental action, we must assess whether the issues presented here are 'capable of repetition, yet evading review,' so that the complaining party is adversely affected by the government 'without a chance of redress.'" *Jersey Cent. Power*, 772 F.2d at 40. This exception is plainly inapplicable here since the availability of judicial review of the EPA orders in the Courts of Appeals provides Inhance with a "chance of redress."

Clearly, when the courts speak of "meaningful relief" or a "remedy to impose," they are referring to relief or a remedy that could address the claims in a complaint or counter-claim, not "relief" in the form of dismissing a complaint. That is not relief at all, but rather a determination that no relief will be granted. Here, Inhance has not filed any counter-claims, and thus there is no relief it is seeking other than to be released from having to defend the case. Thus, the case is moot if the Plaintiffs' claims are moot. It would defy logic, and lack any support in the caselaw, to determine that a case was not moot because "meaningful relief" was still possible in the form of the possible grant of a motion to dismiss moot claims.

In this case, EPA has completed its review of the SNUNs, made unreasonable risk determinations and issued orders directing Inhance to stop producing the nine SNUN substances. Thus, EPA has taken all the actions required by section 5(a) of TSCA in response to the SNUNs. Upon taking effect, the section 5(e) and 5(f) orders will supersede the LCPFAC SNUR and impose legally binding prohibitions on Inhance's formation of LCPFACs during fluorination.

 A declaration that Inhance is in violation of the SNUR or an injunction requiring Inhance to comply with the SNUR could not accomplish anything that the orders themselves do not achieve and would therefore be redundant. For this reason, the declaratory and injunctive remedies sought in the complaints of the United States and Plaintiff-Intervenors are "effectively" moot.[7] As Inhance says and we concur, "with the impending conclusion of the review period and issuance of the Unilateral Orders, Plaintiffs' pending motions for summary judgment are effectively mooted." Inhance Notice, at 2. *Otter Point Dev. Corp. v. U.S. Army Corps of Eng'rs,*

---

[7] If for some reason the Court were to decide that this case is not moot, however, Plaintiff-Intervenors would then be free to pursue injunctive relief.

*Balt. Dist.*, 116 F. Supp. 2d 648, 651 (D. Md. 2000) (finding that a claim seeking declaratory and injunctive relief was moot when the agency ultimately granted the plaintiff's requested relief, stating "[t]he controversy surrounding these issues, therefore, is no longer 'live' because [the agency] has consented to the requested relief").

While the SNUR will theoretically apply to Inhance between now and the February 28 effective date of the orders, it is neither practical nor necessary for the Court to act on the motions for declaratory and injunctive relief during this limited period. As Inhance implies, even where a case is not yet constitutionally moot, it can be prudentially moot because action mooting the claims is imminent. As the Third Circuit has explained,

> Furthermore, in addition to its threshold constitutional dimension, mootness doctrine incorporates prudential considerations as well . . . Thus, in applying the mootness doctrine, courts, in addition to satisfying the requirements of Article III, must answer the more policy-oriented question whether the parties before it have, at the time for decision sufficient functional adversity to sharpen the issues for judicial resolution . . . Accordingly, the central question of all mootness problems is whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief.

*In re Surrick*, 338 F.3d 224, 230 (3d Cir. 2003) (citations and internal quotation marks omitted). A case is prudentially moot where, as here, "events so overtake a lawsuit that the anticipated benefits of a remedial decree no longer justify the trouble of deciding the case on the merits." *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1210 (10th Cir. 2012); *see also Jones v. Stitt*, No. 22-6094, 2023 U.S. App. LEXIS 2632, at *6 (10th Cir. Feb. 2, 2023) (unpublished) ("Because none of the relief Jones seeks would have any effect in the real world, we dismiss Jones's appeal as moot").

The prudential mootness doctrine has specifically been applied where the relief sought has been ordered though not yet completed. *Los Alamos Study Grp. v. United States DOE*, 794 F.

Supp. 2d 1216 (D.N.M. 2011), *aff'd on other grounds, Los Alamos Study Grp. v. Dep't of Energy*, 692 F.3d 1057 (10th Cir. 2012) (finding prudential mootness where plaintiffs sought the preparation of a new environmental impact statement that the agency was then in the process of preparing but had not yet completed); *White v. Gilley*, 2023 U.S. Dist. LEXIS 163222, at *3-4 (E.D. Ky. 2023) (finding prudential mootness where the relief sought would soon be realized).

Although Inhance recognizes that plaintiffs' requests for relief no longer are meaningful, it then reverses field, insisting that its "motions to dismiss remain highly relevant [and] the issues presented . . . are now squarely before this Court." Inhance Notice at 2. To support this dubious proposition, it asserts that the EPA orders "ignore the legal issues central to Inhance's motion to dismiss," which include "whether the fluorination process constitutes a 'new use'" subject to SNUR requirements under TSCA and whether the LCPFACs produced during fluorination are "byproducts" covered by the SNUR or merely "impurities" that are exempt. *Id.* at 1.

It is puzzling why Inhance believes EPA should have addressed these issues in the orders since, in its March 1, 2022, Notice of Violation to Inhance and its filings in this case, the Agency has repeatedly articulated why the SNUR applies to the company's fluorination process. EPA is certainly aware of Inhance's contrary arguments and its decision to issue the orders in reliance on its SNUR authority is more evidence (if any were needed) of the Agency's position that Inhance's conduct is prohibited by the SNUR.[8]

Even more problematic is Inhance's assumption that the Court still has jurisdiction to decide motions that seek to dismiss claims that, by Inhance's own admission, are no longer

---

[8] In the two orders, EPA reiterated that "[t]he SNUN Chemical Substances are byproducts of the fluorination of plastic fuel storage containers and tanks." 5(f) order at 10.

justiciable. Since the December 1 orders supersede the SNUR in defining Inhance's obligations and eliminate any need to compel Inhance to comply with the SNUR, the validity of the SNUR is no longer at issue in this case. Inhance may believe that the orders are unlawful because TSCA and EPA regulations did not authorize EPA to treat the formation of LCPFACs during fluorination as a "significant new use." But the orders are outside the scope of this case and cannot be challenged under TSCA sections 17 and 20, which plaintiffs' Complaints invoked as the basis for the Court's jurisdiction. In short, because plaintiffs' claims are moot, Inhance's defenses to these claims are moot as well and the entire case should be dismissed.

## II.     TSCA Confers Exclusive Jurisdiction to Review the 5(e) and 5(f) Orders on the Courts of Appeals

Inhance's collateral attack on EPA's orders by seeking a ruling in this case on issues that are now moot should fail for another reason. TSCA Section 19(a)(1)(A), 15 U.S.C. § 2618(a)(1)(A), confers jurisdiction on U.S. Courts of Appeals over petitions to review orders for SNUN substances under section 5(e) and 5(f) and provides that jurisdiction to review such orders is "exclusive."[9] Inhance has in fact already filed a petition for review of the orders in the Fifth Circuit. "[W]here a federal statute provides for direct review of an agency action in the court of appeals, such '[s]pecific grants of exclusive jurisdiction to the courts of appeals override general grants of jurisdiction to the district courts.'" *Nuclear Info. & Resource Service v. United States Dep't of Transp. Research & Special Programs Admin.*, 457 F.3d 956, 958-59 (9th Cir. 2006). As the Supreme Court has emphasized, "[j]udicial review provisions . . . are jurisdictional in nature

---

[9] Section 19(a)(1)(A) recognizes that district court review of such orders may be available "in an enforcement proceeding." However, as discussed in this Brief, this limited exception does not apply because the enforcement action now pending in this Court is moot.

and must be construed with strict fidelity to their terms." *Stone v. INS*, 514 U.S. 386, 405 (1995); *see also Conoco, Inc. v. Skinner*, 970 F.2d 1206, 1214 (3d Cir. 1992) ("[t]he Hobbs Act should be liberally construed to allow exclusive jurisdiction in the court of appeals)."

These principles control here and require this Court to reject Inhance's effort to use this case to challenge EPA orders that are reviewable only in the courts of appeals.

## CONCLUSION

For all the foregoing reasons, all the claims in this case are moot, and the case should therefore be dismissed.

Dated: December 11, 2023

Respectfully submitted,

*/s/ Michael D. Fiorentino*
Michael D. Fiorentino
LAW OFFICE OF MICHAEL D. FIORENTINO
PA Bar No. 73576
42 E. Second St., Suite 200
Media, PA  19063
(610)-566-2166
mdfiorentino@gmail.com
*Attorney for Intervenor-Plaintiffs*

/s/ Robert M. Sussman
Robert M. Sussman
*Pro Hac Vice*
SUSSMAN & ASSOCIATES
DC BAR NO. 226746
3101 Garfield Street, NW
Washington, DC 20008
(202) 716-0118
bobsussman1@comcast.net
*Attorney for Intervenor-Plaintiff Center for Environmental Health and Jay De La Rosa*

*/s/ Paula Dinerstein*

15

Paula Dinerstein *Pro
Hac Vice*
General Counsel
PUBLIC EMPLOYEES FOR ENVIRONMENTAL
RESPONSIBILITY

DC BAR NO. 333971
962 Wayne Avenue, Suite 610
Silver Spring, MD 20910
202-265-7337
pdinerstein@peer.org
*Attorney for Intervenor-Plaintiff Public Employees for
Environmental Responsibility*

## CERIFICATE OF SERVICE

Pursuant to Local Civil Rule 7.1(d), I certify that on December 11, 2023, I electronically filed

the foregoing Plaintiff-Intervenors Brief In Response to the Court's December 4, 2023 Order

Directing The Parties To Address Mootness using the CM/ECF system. Notice of this filing will

be sent by operation of the Court's electronic filing system to all parties of record.


<u>/s /Michael D. Fiorentino</u>
Michael D. Fiorentino