**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) Civil Action No. 5:22-cv-05055-JFM |
| | ) |
| INHANCE TECHNOLOGIES, LLC, | ) |
| | ) |
| *Defendant.* | ) |

**MEMORANDUM OF INTERVENOR-PLAINTIFFS ON THE PATH
FORWARD IN THIS CASE FOLLOWING THE RECENT FIFTH CIRCUIT
DECISION**

Michael D. Fiorentino
LAW OFFICE OF MICHAEL D.
FIORENTINO
PA Bar No. 73576
42 E. Second St., Suite 200
Media, PA  19063
*Attorney for Intervenor-Plaintiffs*

Robert M. Sussman *Pro Hac Vice*
SUSSMAN & ASSOCIATES
DC BAR NO. 226746
3101 Garfield Street, NW
Washington, DC 20008
*Attorney for Intervenor-Plaintiffs*
*Center for Environmental Health and Jay De La  Rosa*

Paula Dinerstein *Pro Hac Vice*
General Counsel
PUBLIC EMPLOYEES FOR
ENVIRONMENTAL
RESPONSIBILITY
DC BAR NO. 333971
962 Wayne Avenue, Suite 610
Silver Spring, MD 20910
*Attorney for Intervenor-Plaintiff Public Employees*
*for Environmental Responsibility*

April 8, 2024

i

## TABLE OF CONTENTS

Table of Authorities …………………………………………………………………....iii

Summary and Recommendations………………………………………………………1

I.  The Fifth Circuit Decision is Deeply Flawed and Should Not be Followed by this Court**……**.6

   A**.** The Fifth Circuit Lacked Jurisdiction to Determine the Statutory Basis for the SNUR…….7

   B.  The Fifth Circuit Misread TSCA in Concluding that Previously Existing Uses Can Never
       be "Significant New Uses" Subject to SNURs…………………………………………8

II.  Inhance Is Barred from Producing LCPFACs during Fluorination Unless EPA Completes All
Steps in the SNUN Review Process and Authorizes Manufacture to Proceed…………………..12

Conclusion…………………………………………………………………………15

## TABLE OF AUTHORITIES

**Cases**

*ExxonMobil Pipeline Co. v. U.S. Dep't of Transp.,* 867 F.3d 564, 578-79 (5th Cir. 2017)...........10

*General Elec. Co. v. EPA,* 53 F.3d 1324 (D.C. Cir. 1995)……………………………………..10

*Lakeshore Broadcasting, Inc. v. FCC,* 199 F.3d 468, 475 (D.C. Cir. 1999)………………………10

*Pacific Gas Electric Co. v. Fed. Power Com'n*, 506 F.2d 33 (D.C. Cir. 1974)…………………….7

*Texas Municipal Power Agency v. EPA*, 836 F.2d 1482 (5th Cir. 1988)…………………………..7

**Statutes**

*Toxic Substances Control Act*

Section 5(a)…………………………………………………………………………..2,9,13

Section 5(a)(1)(A)(ii)……………………………………………………………………13

Section 5(a)(1)(B)…………………………………………………………………..12

5(a)(1)(B)(i)………………………………………………………………………...14

Section 5(a)(3)(A)……………………………………………………………….10,13

Section5(a)(3)(B) ………………………………………………………………………13

Section 5(a)(3)(B)(ii)(I)………………………………………………………………..6

Section 5(a)(3)(C)………………………………………………………………………13

Section5(e)………………………………………………………… ..2,3,6,14

Section 5(f)……………………………………………………………………3,6,13,14

Section 6………………………………………………………………………………….9

Section 6(b)(4)(F)(iii)…………………………………………………………………10

Section 19(a)(1)(A)**………………………………………………………………...3,7**

Section 26(k)……………………………………………………………………....8

**Regulations**

40 C.F.R. § 721.10536……………………………………………………………………1

40 C.F.R. § 721.9582(c)(5)………………………………………………………………9

**Federal Register Notices**

67 Fed. Reg. 11008 (March 11, 2002)**……………………………………………………9**

67 Fed. Reg. 72854 (December 9, 2002)………………………………………………………9

77 Fed. Reg. 19862 (April 2, 2012)…………………………………………………………8

80 Fed. Reg. 2885(Jan. 21, 2015)…………………………………………………………8

84 Fed. Reg. 17345 (April 25, 2019)

85 Fed. Reg. 12479 (Mar. 3, 2020)……………………………………………….....8

89 Fed. Reg. 1822 (Jan. 11, 2024)…………………………………………………………8

**Other**

Federal Rule of Appellate Procedure 41(b)…………………………………………………..2

Rand, A. A., & Mabury, S. A. (2011). Perfluorinated carboxylic acids in directly fluorinated high-density polyethylene material. *Environmental science & technology*, *45*(19), 8053-8059……………………………………………………………………………...11

Senate Report 114–67, 114th Cong. 1st Sess.( June 18, 2015)…………………………….. 9,12,13

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | )  Civil Action No. 5:22-cv-05055-JFM |
| | ) |
| INHANCE TECHNOLOGIES, LLC, | ) |
| | ) |
| *Defendant.* | ) |

## MEMORANDUM OF INTERVENOR-PLAINTIFFS ON THE PATH FORWARD IN THIS CASE FOLLOWING THE RECENT FIFTH CIRCUIT DECISION

As directed by the Court's March 22, 2024 Order, intervenor-plaintiffs hereby present their recommendations for how this case should proceed following the March 21, 2024 decision of the Court for Appeals for the Fifth Circuit in *Inhance Technologies, LLC v. US Environmental Protection Agency* (No. 23-60620). [1]

### Summary and Recommendations

The Fifth Circuit decision is not controlling in this Circuit. We believe the decision is wrong and the Court should decline to follow it. If the Court agrees, a live case and controversy will remain over whether Inhance's ongoing production of dangerous Per- and Polyfluoroalkyl substances ("PFAS") violates the Toxic Substances Control Act ("TSCA"). The Court should therefore lift its stay of this case and set an expeditious schedule for filing and briefing dispositive motions on the unresolved issues.

---

[1] Intervenor-plaintiffs were denied intervention in the Fifth Circuit case and participated in briefing as *amici curiae.*  Since they were not parties, the Court's opinion does not have any direct impact on intervenors.

1

Plaintiff-intervenors see absolutely no reason to continue the stay in this case until the Fifth Circuit issues its mandate as requested by the Government. The Fifth Circuit's decision is not binding on this Court.[2]  The Court is free to follow or ignore the decision as it sees fit. Its relevance to this case is solely a function of its persuasive value in shaping the Court's analysis and the issues it addresses are not determinative of those before this Court. It is pure conjecture whether the Government will seek rehearing or reconsideration *en banc*, whether the Fifth Circuit will grant that request and reverse or modify its decision and, if so, whether its action will shed meaningful light on the issues in this case. Moreover, if the decision is reheard or reconsidered by the court, the mandate could be delayed not just for forty-five days but for several months or longer under Federal Rule of Appellate Procedure 41(b). An open-ended stay of a district court case to allow for the mere possibility of rehearing or reconsideration of a decision from another Circuit that may or not have a bearing on the case at hand is without precedent and highly prejudicial to intervenor-plaintiffs and the interests they represent.

Because of the Fifth Circuit's stay of the December 1, 2023 orders issued by the Environmental Protection Agency ("EPA"), millions of newly fluorinated PFAS-contaminated containers are now entering commerce and being used in homes and businesses across the US, putting hundreds of thousands of Americans at risk of serious health effects. Thus, four months after EPA took action to stop this threat to public health, these risks are not only unabated but

---

[2]  This case was filed a year before Inhance's petition for review in the Fifth Circuit. Knowing that EPA was reviewing the SNUNs and had not taken action, the Court put on hold a decision on motions on liability and injunctive relief that were fully briefed as of the summer of 2023. Had the Court ruled on these motions then, it rather than the Fifth Circuit would have been the first judicial body to address the scope of EPA's SNUR authority and the legal basis for Inhance's production of PFAS. For the Court to continue to defer to a later filed case in another circuit after declining to rule on the case before it for several months could be viewed as an abdication of judicial responsibility.

have become more urgent. An indefinite stay in this case on top of the months of delay that have already occurred will cause needless and avoidable harm to the public without any offsetting benefits to the Court's deliberations.

Inhance's alleged TSCA violations stem from its failure to comply with a 2020 significant new use rule ("SNUR") issued by EPA under section 5(a) of TSCA. 40 C.F.R. § 721.10536. The SNUR bars the manufacture of a harmful subset of PFAS called long-chain perfluoroalkyl carboxylates ("LCPFACs") until EPA completes its review of their risks *and* either authorizes production or imposes restrictions necessary to address health or environmental risks in accordance with TSCA. Because these conditions were not met, Inhance was in non-compliance with the SNUR when the United States filed this case on December 19, 2022 (ECF 3). While there have been changes in circumstance since then, that violation continues today, fifteen months later, because Inhance is still producing LCPFACs during fluorination even though the necessary steps in the SNUR review process have not been completed.

Inhance filed significant new use notices ("SNUNs") with EPA on December 30, 2022. On December 1, 2023, under sections 5(e) and 5(f) of TSCA, EPA issued orders determining that nine LCPFACs produced by Inhance present or may present unreasonable risks to health and the environment and prohibiting their manufacture, processing, distribution in commerce, and disposal. These orders were set to become effective on February 28, 2023 but were stayed by the Fifth Circuit on December 12, 2023 and then vacated in its March 21, 2024 decision.[3] In that decision, the Court did not directly invalidate the SNUR. However, it concluded that EPA lacked authority to issue the orders because the Inhance fluorination process, which predated the SNUR

_____

[3] The vacatur will not take effect until the mandate issues. For now, it is the immediate effect of the stay of the EPA orders which allows Inhance's continuing production of LCPFACs.

and continued after it was promulgated, could not be deemed a "significant new use" within the meaning of TSCA.

This Court is not bound by the Fifth Circuit's decision and should reject its conclusions and analysis because the decision lacked jurisdiction to review the EPA SNUR and misinterpreted TSCA to prohibit SNURs for any previously existing use.

First, courts of appeals cannot directly determine the statutory basis for SNURs under section 19(a)(1)(A) where, as here, a petition for review was not filed within 60 days of the SNUR's promulgation. Thus, the Fifth Circuit lacked jurisdiction to examine whether the SNUR properly defined fluorination as a "significant new use." By contrast, under section 19(a)(1)(A) of TSCA, district courts are empowered to examine the validity of SNURs when addressing defenses to enforcement actions alleging their violation. Thus, unlike the Fifth Circuit, this Court has unquestioned jurisdiction to decide whether the SNUR exceeds EPA's authority under TSCA.

Second, on the merits, the Fifth Circuit's analysis misconstrues the language, structure and intent of TSCA and eviscerates EPA's ability to use the SNUR authority to protect the public from chemical risks. Thus, in further briefing, intervenors will urge the Court to rule that, under a correct interpretation of TSCA, the SNUR is within EPA's statutory authority and properly defines fluorination as a significant new use. We will then argue that Inhance's ongoing production of LCPFACs is not permissible under TSCA because the final steps in the statutory review process – the issuance of enforceable and legally binding orders under sections 5(e) and 5(f) and Inhance's compliance with those orders – have not occurred. If the Court does not follow the Fifth Circuit's reasoning and upholds the validity of the SNUR, Inhance would thus lack authorization to produce LCPFACs under the plain language of TSCA. Accordingly, its ongoing manufacture of these PFAS would be a clearcut violation of the law.

4

To frame these issues for expeditious decision, we recommend that the Court establish a two-stage process for filing and briefing dispositive motions. In the first stage, the Court should direct the plaintiffs to file new partial motions for summary judgment on liability and direct Inhance to file an updated motion to dismiss. Briefing on these motions should address whether the Court should follow the Fifth Circuit's analysis or determine that the SNUR lawfully imposes obligations on Inhance. Briefing should also address whether, if fluorination is properly deemed a significant new use subject to the SNUR, EPA has failed to complete the mandated steps in the SNUN review process and Inhance therefore lacks authorization under TSCA to produce PFAS during fluorination.

After briefing is complete, the Court should hear argument on the motions and rule on whether Inhance remains in ongoing violation of the SNUR or the case should be dismissed. If the Court holds that the SNUR is a valid exercise of EPA's TSCA authority and Inhance is violating it by continuing to produce LCPFACs without authorization by EPA, the Court should direct the plaintiffs to file summary judgment motions on the proper remedy, determine what relief is warranted and enter an appropriate order.

While the United States previously suggested that discovery may be desirable before the Court rules on Inhance's liability for violating TSCA or the need for injunctive relief, we strongly oppose this path. The validity of EPA's SNUR and its application to fluorination present issues of law which should be resolved based on controlling judicial decisions, the text and intent of the statute and the undisputed facts. Similarly, as intervenors previously demonstrated, authoritative Supreme Court decisions hold that where a party has violated an unambiguous statutory directive, issuance of an injunction to restrain the violation is non-discretionary and does not depend on a balancing of equities. Most importantly, further delay in resolving the

issues to allow discovery will result in additional harm to consumers and workers from the well-documented and serious dangers of fluorinated containers.

## I.   The Fifth Circuit Decision is Deeply Flawed and Should Not be Followed by this Court

The Fifth Circuit decision addresses the validity of the two orders EPA issued on December 1, 2023 following its review of Inhance's SNUNs. Together, the orders prohibit the manufacture, processing, distribution in commerce, use, or disposal of nine LCPFACS formed during Inhance's fluorination process.  ECF 68.

The first order applies to three of the LCPFACs. It determines under TSCA section 5(a)(3)(A) that their "manufacture, processing, distribution in commerce, use, and disposal . . . presents an unreasonable risk of injury to health or the environment." 5(f) order at 3. This determination obligated EPA to issue an order under section 5(f)(1) of TSCA, 15 U.S.C. § 2604(f)(1), which directs the Agency to prohibit or restrict SNUN substances presenting an unreasonable risk "to the extent necessary to protect against such risk."

The second order addresses the other six LCPFACs for which Inhance submitted SNUNs. It is based on a determination under TSCA section 5(a)(3)(B)(ii)(I) that "in the absence of sufficient information to permit EPA to make a reasoned evaluation of the health and environmental effects of the" SNUN substances, they "may present an unreasonable risk of injury to health or the environment." 5(e) Order at 3. As a result of this determination, EPA was obligated to issue an order under section 5(e) of TSCA, 15 U.S.C. §2604(e), which requires restrictions on manufacture and other activities where substances "may present" an unreasonable risk but available information on the risk is insufficient. EPA's order requires Inhance to conduct testing on the six LCPFACs but directs that "manufacture of the SNUN Chemical Substances [may not] commence while testing is being conducted [b]ased on concerns for persistence, bioaccumulation, and hazards." *Id*. at 5.

During proceedings in the Fifth Circuit, there was no dispute that the fluorination process produces nine LCPFACs subject to the SNUR. Thus, the Court took as a given the presence of these harmful PFAS in fluorinated containers and their contents. In its briefs, Inhance challenged both the legal basis for the orders and the sufficiency of the evidence of unreasonable risk on which the orders were based. However, the Court only focused on one of Inhance's legal claims – that fluorination does not comprise a "significant new use" under TSCA. It did not address the claimed flaws in EPA's determinations of unreasonable risk. Thus, EPA's determinations of unreasonable risk and supporting risk evaluation still stand.

**A**. **The Fifth Circuit Lacked Jurisdiction to Determine the Statutory Basis for the SNUR**

The Fifth Circuit assumed that the EPA orders could be set aside if fluorination was not a "significant new use" as defined in TSCA. However, the orders themselves did not address the scope of EPA's SNUR authority. Instead,  presuming that Inhance's SNUNs were submitted under the authority of the SNUR, EPA reviewed the SNUNs as required by TSCA and then took the regulatory actions compelled under the law by the scientific conclusions of that review. Thus, the United States and *amici* argued in the Fifth Circuit that the orders were not a proper vehicle for challenging EPA's interpretation of its SNUR authority and that a direct challenge to the 2020 SNUR was time-barred because the 60-day deadline in TSCA section 19(a) for challenging the SNUR had long since passed.[4] Although the Fifth Circuit has previously held that "[s]tatutory time limits on petitions for review of agency actions are jurisdictional in nature [and] if the challenge is brought after the statutory time limit, we are powerless to review the agency's

_____

[4] As noted above, that is not a problem in this case because section 19(a)(1) allows the validity of EPA rules to be raised as a defense to district court enforcement actions alleging that the rule has been violated.

7

action,"[5] the Court stated in a brief footnote that "the propriety of the EPA's orders necessarily involves EPA's authority to issue both the orders and the SNUR."[6] Opinion, ECF 87-1 at 9 n. 7. We believe the Court erred under the caselaw by seeking to exercise jurisdiction over the SNUR in the guise of reviewing the orders, circumventing the 60-day statutory deadline for seeking judicial review of the SNUR.

   **B.  The Fifth Circuit Misread TSCA in Concluding that Previously Existing Uses Can Never be "Significant New Uses" Subject to SNURs**

   In addressing whether the SNUR exceeded EPA's authority, the Court acknowledged that the "statute defines neither 'significant new use' nor 'new.'" Opinion at 8. Instead, it recognized that "EPA defines what constitutes a significant new use." Id. at 3. There are numerous dictionary definitions of "new" that might form the basis for interpreting EPA's SNUR authority and both EPA and Inhance proposed definitions for the Court's consideration. Id. at 8-9. Despite EPA's discretion under the law in defining a significant new use, the Court rejected its preferred definition of "not previously known" and chose Inhance's narrower definition of "not previously existing." Id. at 9-12. Applying this definition, the Court found that Inhance's fluorination process was not "new" because it had "existed" before the SNUR was proposed. [7]

---

[5] *Texas Municipal Power Agency v. EPA*, 836 F.2d 1482, 1484 (5th Cir. 1988)

[6] The DC Circuit, however, has held that:

   > A properly adopted substantive rule establishes a standard of conduct which has the force of law. In subsequent administrative proceedings involving a substantive rule, the issues are whether the adjudicated facts conform to the rule and whether the rule should be waived or applied in that particular instance. The underlying policy embodied in the rule is not generally subject to challenge before the agency.

*Pacific Gas Electric Co. v. Fed. Power Com'n*, 506 F.2d 33, 38 (D.C. Cir. 1974). Under this holding, the underlying legal basis of the SNUR could not be attacked when challenging orders applying the SNUR to specific conduct.

[7] The Court's definition of "new use" as "not previously existing" would deprive EPA of authority to issue SNURs for uses of chemicals that existed for many years but have been discontinued. On this rationale, the LCPFAC SNUR in its entirety would be unlawful because many LCPFACs had widespread and well-established uses that were phased out under a 2006 agreement between EPA and their major producers. Similarly, many other SNURs for PFAS and

This approach ignores the reality that EPA can only exempt from SNURs existing uses that are known to the Agency and that, in the case of the LCPFAC SNUR, EPA made every conceivable effort to solicit information from industry about LCPFAC uses that were ongoing when the SNUR was proposed in 2015.[8] Having fulfilled its obligation under section 26(k) of TSCA to consider all "reasonably available information" and exempted those existing uses it could ascertain through diligent research, the only practical and workable approach was for EPA to define uses it could *not* document or identify as "significant new uses" because they were not "previously known" to the Agency. Over the years, EPA has applied this approach to numerous SNURs for PFAS and other substances.[9] The Fifth Circuit decision, however, would force EPA to limit the scope of SNURs to those few uses that it could *affirmatively demonstrate* are *not ongoing and never existed* – imposing an impossible burden of proof that in practice would prevent the Agency from issuing meaningful SNURs and bring the TSCA program to a standstill.

Asserting that its interpretation of TSCA this drastic was consistent with the structure and intent of TSCA, the Court claimed that Congress wanted all existing uses of chemicals to be addressed under EPA's regulatory authority in section 6 rather than SNURs under section 5 because it would then be required "to conduct a cost-benefit analysis, weighing the negative effects of the chemical substance against the benefits of the substance as well as the economic

---

other substances address previous uses that were terminated and would likewise be beyond EPA's SNUR authority under the Court's definition.  E.g. 89 Fed. Reg. 1822 (Jan. 11, 2024) (329 discontinued PFAS);  77 Fed. Reg. 19862 (April 2, 2012) (discontinued uses of Polybrominated Diphenylether flame retardants).

[8] Both the initial 2015 SNUR proposal (80 Fed. Reg. 2885) and March 3, 2020 reproposal (85 Fed. Reg. 12479) urged industry to identify existing uses of LCPFACs predating January 21, 2015. Industry commenters informed EPA of several such uses and they were duly exempted from the final rule at 40 C.F.R. § 721.9582(c)(5).

[9] E.g. 84 Fed. Reg. 17345 (April 25, 2019) (asbestos). 67 Fed. Reg. 72854 (December 9, 2002)(PFAS); 67 Fed. Reg. 11008 (March 11, 2002)(PFAS).

consequences of prohibiting the substance." Op. at 10. This is an egregious misreading of section 6. Congress in fact chose to *eliminate* cost-benefit analysis from section 6 when it amended TSCA in 2016.[10] As a result, the standard for determining unreasonable risk under the current law is the same under section 5 and section 6 and in both instances precludes consideration of "costs and other non-risk factors" in making risk determination and defining the level of protection necessary to eliminate unreasonable risks.  (Compare TSCA §5(a)(3) (significant new uses) with §6(b)(4)(F)(iii) (existing chemicals)).

The Fifth Circuit decision also defended Inhance's narrow definition of new use on the ground that it would avoid "serious constitutional concerns" under the doctrine that agencies must "give the public fair notice of their rules before finding a violation of them." Op. at 11. However, the Court ignored definitive interpretations of this doctrine by multiple courts of appeals, including the Fifth Circuit.  In the widely-cited formulation of the DC Circuit:

> [The test is] whether the regulated party received, or should have received, notice of the agency's interpretation in the most obvious way of all: by reading the regulations. If, by reviewing the regulations and other public statements issued by the agency, a regulated party acting in good faith would be able to identify, with "ascertainable certainty," the standards with which the agency expects parties to conform, then the agency has fairly notified a petitioner of the agency's interpretation.

*General Elec. Co. v. EPA*, 53 F.3d 1324, 1329 (D.C. Cir. 1995). A regulated party is thus not "entitled, as a matter of due process, to personal notice of all existing regulatory requirements that might affect its application; rather, the burden was upon [the party] to read and to comply with the agency's published regulations." *Lakeshore Broadcasting, Inc. v. FCC*, 199 F.3d 468,

---

[10] See Senate Report 114–67, 114th Cong. 1st Sess. (June 18, 2015) at 4 (explaining that amended TSCA eliminates the requirement in section 6 that "cost and benefit considerations must be applied to the Agency's decisions on the health and environmental risks posed by a chemical substance").

475 (D.C. Cir. 1999). *See also ExxonMobil Pipeline Co. v. U.S. Dep't of Transp.*, 867 F.3d 564, 578-79 (5th Cir. 2017).

The Fifth Circuit found that Inhance would need "extraordinary intuition" or "the aid of a psychic" to ascertain that the EPA SNUR applied to the formation of LCPFACs during fluorination. Op. at 11.  However, the record in this case plainly demonstrates otherwise. It is unlikely that any technically savvy company whose dominant business was fluorine chemistry would have been ignorant of the highly publicized PFAS issue during the SNUR rulemaking. In fact, a 2011 scientific publication reporting the results of testing on fluorinated containers obtained from Inhance (then named Fluro-Seal) showed significantly elevated concentrations of LCPFACs.[11] Similarly, Inhance filed a patent application in 2019 for a fluorination process to extract PFOA and other LCPFACs from PFAS-based polymers;  to demonstrate the benefits of the new process, the application highlighted in detail the serious health effects of PFAS.[12]  Under these circumstances, a reasonably diligent company in Inhance's position *should have known* of the proposed SNUR and its application to the formation of PFAS during fluorination. Even on the dubious assumption that Inhance was ignorant of the SNUR and had no inkling of the formation of PFAS during fluorination,[13] that only demonstrates  the company's own lack of diligence, not EPA's failure to provide fair notice.

---

[11] Rand, A. A., & Mabury, S. A. (2011). Perfluorinated carboxylic acids in directly fluorinated high-density polyethylene material. *Environmental science & technology*, *45*(19), 8053-8059.
[12] https://patents.google.com/patent/US11014999B2/en.
[13] Without considering the contrary evidence, the Fifth Circuit made the blanket assertion that Inhance did not "know (sic) that its fluorination process resulted in the creation of PFAS until March 22, 2022" and previously had "no reason to know it would be subject to the new SNUR." Op. at 11. Apart from failing to acknowledge the evidence that Inhance had grounds to know that fluorination formed PFAS years before the SNUR was promulgated in 2020, these statements by the Court ignored the fact that EPA testing conducted on Inhance-fluorinated containers weeks after the SNUR took effect documented the presence of LCPFACs subject to the SNUR.

11

The premise of the Fifth Circuit's decision is that a complex rule that applies to hundreds of discrete substances must identify all current and past uses of these chemicals so that the regulated community is informed of every activity that may be covered by the rule while chemical producers have no obligation to understand what the rule says and how it applies to their products and processes unless EPA specifically brings it to their attention. No plausible interpretation of the fair notice doctrine requires this extreme result.

## II.   Inhance Is Barred from Producing LCPFACs during Fluorination Unless EPA Completes All Steps in the SNUN Review Process and Authorizes Manufacture to Proceed

During further briefing, the parties should also address whether, assuming Inhance violated the SNUR, that violation is still continuing or ceased following the issuance of the December 1 orders and the stay and vacatur of those orders by the Fifth Circuit. We believe the violation is still ongoing under the plain language of TSCA.

Prior to 2016, TSCA allowed submitters of SNUNs to proceed with production if EPA failed to take regulatory action within the 90-day notice review period. However, concerned that this approach was permitting too many unsafe chemicals to enter commerce,[14] Congress amended TSCA so that production could not occur unless EPA has completed its review of the notice and made an affirmative determination either that (1) the substance or use is unlikely to present an unreasonable risk **or** (2) it does or may present such a risk and enforceable orders are necessary to protect health or the environment. Moreover, Congress went further and barred production unless EPA had in fact issued binding orders addressing the unreasonable risk and the submitter was complying with them.

---

[14] According to the Senate report, "concerns have been raised that [the existing law] does not require EPA to make an affirmative finding that a new chemical or a significant new use is not likely to present an unreasonable risk" before it can enter production. Senate Report 114–67 at 3.

As the Senate report on the 2016 TSCA amendments states:  "The amendment modifies the new chemical review process by requiring that EPA make the determination that a new chemical substance or a significant new use is likely to meet the safety standard before it can be commercially manufactured or processed. . . . *The section also prohibits manufacture or processing of a new chemical or significant new use found not likely to meet the safety standard except in compliance with any conditions imposed by EPA sufficient to ensure likely safety."* Senate Report 114–67 at 14 (emphasis added.)

This framework is embodied in the carefully framed language of section 5(a) of TSCA. Section 5(a)(1)(A)(ii) provides that "no person may manufacture or process any chemical substance for a use which the Administrator has determined . . . is a significant new use" unless the specific steps specified in section 5(a)(1)(B) have been completed. These include: (1) submission of a notice at least 90 days in advance of manufacture (subparagraph (B)(i); (2) review of the notice by EPA (subparagraph (B)(ii)(I)); (3) a determination of unreasonable risk by the Agency under section 5(a)(3) (subparagraph (B)(ii)(II));  and (4) "actions [by EPA] required in association with that determination" (id).

Section 5(a)(3) further defines the different risk determinations EPA may make upon reviewing a SNUN and the "associated" regulatory actions triggered by these determinations.  As relevant to this case, EPA has three choices. First, under section 5(a)(3)(C), EPA may determine that the significant new use is "not likely to present an unreasonable risk to health or the environment." Only in this case can the SNUN submitter "commence . . . manufacture or processing  for a significant new use" without further action by EPA. Second, under section 5(a)(3)(A), EPA may determine that the significant new use "presents an unreasonable risk of injury." In this case, the Agency "shall take the actions required under [section] 5(f)" – i.e. issue

an order prohibiting or restricting the new use to protect against the unreasonable risk. Third, under section 5(a)(3)(B), EPA may determine that, in the absence of sufficient information for a full risk evaluation, the significant new use "may present an unreasonable risk of injury," requiring EPA "shall take the actions required under [section] 5(e)" – i.e. issue an order requiring development of data coupled with a ban on or restriction of manufacture to protect against the potential unreasonable risk.

Under section 5(a)(1)(B)(i), a SNUN submitter's authorization to manufacture or process a substance for a significant new use is further conditioned on whether the submitter "complies with any requirement of, or imposed pursuant to, subsection . . . (e) or (f)." In short, if the submitter is not conforming to a binding section 5(e) or 5(f) order issued by EPA, the SNUN review process has not yet been completed and the prohibition on manufacture in sections 5(a)(1)(A)(ii) and 5(a)(1)(B) remains in effect.

This is the case here. The December 1, 2023 orders issued by EPA under section 5(e) and 5(f) are not in effect because of the Fifth Circuit stay and Inhance is not complying with these or any other requirements of TSCA addressing EPA's determinations of unreasonable risk. Thus, the final steps in the statutory SNUR review process – legally binding administrative actions necessary to mitigate the risks demonstrated by EPA and compliance by the submitter with the restrictions they impose – has not occurred. Until these steps are taken, the plain language of section 5(a)(1)(A)-(B) prohibits Inhance from producing LCPFACs during fluorination.

To be clear, this prohibition presupposes that EPA has authority under TSCA to treat fluorination as a significant new use that is subject to the statutory SNUN review process. The Fifth Circuit found that EPA lacks such authority. However, if this Court reaches a contrary

conclusion and holds that fluorination is a "significant new use," the plain language of the law requires EPA to complete all elements of the SNUN process before Inhance may produce PFAS.

### Conclusion

The Court should issue an order setting a schedule for the filing of dispositive motions by plaintiffs and defendant and submission of briefs addressing the issues outlined above.

Dated: April 8, 2024

Respectfully submitted,

*/s/ Michael D. Fiorentino*
Michael D. Fiorentino
LAW OFFICE OF MICHAEL
D. FIORENTINO PA Bar No.
73576
42 E. Second St., Suite 200
Media, PA  19063
(610)-566-2166
mdfiorentino@gmail.com
*Attorney for Intervenor-Plaintiffs*

/s/ Robert M. Sussman
 Robert M. Sussman *Pro Hac Vice*
SUSSMAN & ASSOCIATES
 DC BAR NO. 226746
 3101 Garfield Street, NW
 Washington, DC 20008
 (202) 716-0118
 bobsussman1@comcast.net
 *Attorney for Intervenor-Plaintiffs*
 *Center for Environmental Health and Jay De La Rosa*

*/s/ Paula Dinerstein*
 Paula Dinerstein *Pro Hac Vice*
 General Counsel
 PUBLIC EMPLOYEES FOR
 ENVIRONMENTAL
 RESPONSIBILITY
 DC BAR NO. 333971
 962 Wayne Avenue, Suite 610
 Silver Spring, MD 20910
 202-265-7337

pdinerstein@peer.org
*Attorney for Intervenor-Plaintiff Public Employees*
*for Environmental Responsibility*

## CERTIFICATE OF SERVICE

I certify that I electronically filed this brief using the CM/ECF system on April 8, 2024. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

<u>/s/ *Michael D. Fiorentino*</u>
Michael D. Fiorentino
*Counsel for Intervenor-Plaintiffs*